UNITED STATES of America,
Plaintiff,

v.

Horace Douglas WELLS, Jr., Defendant.

Cr. No. 13545.

United States District Court
S. D. Texas,
Houston Division.

Sept. 28, 1959.

William B. Butler, U. S. Atty., and Norman W. Black, Asst. U. S. Atty., Houston, Tex., for plaintiff.

Sam S. Minter, Houston, Tex., for defendant.

INGRAHAM, District Judge.

The defendant, Horace Douglas Wells, Jr., was charged by indictment in eight counts. Each count charges that defendant did willfully and for profit infringe copyright in a map, alleged to be owned by Edgar Tobin Aerial Surveys, by selling to one Gordon Kroll, without authority from the said Edgar Tobin Aerial Surveys, a copy of said map. The offense alleged in each count is a misdemeanor.

The defendant was tried by jury. Defendant moved for judgment of acquittal at the close of the evidence offered by the government. The court reserved decision on the motion. The defendant renewed his motion at the close of all the evidence and the court again reserved decision on the motion and submitted the case to the jury. The jury returned a verdict of guilty on each count. The defendant thereupon renewed his motion for acquittal in writing and submitted a brief in support thereof. The government filed its brief in opposition thereto. The defendant's motion and the briefs have been considered.

On or about September 15, 1958, Edgar Tobin Aerial Surveys, Edgar Tobin, Sole Owner, hereafter referred to as "Tobin", held copyrights properly registered in conformity with the provisions of Title 17 United States Code § 1 et seq., in certain aerial survey maps, also known as

632

ownership base maps, covering adjoining areas in the State of Louisiana, copies of which maps had been deposited at the Copyright Office, Library of Congress, Washington, D. C., after publication with notice of the copyright, and which maps were entitled to copyright protection.

Tobin produced "negatives" of its copyrighted maps, which it delivered to some 107 contract customers with the license to the customer to use the negatives "only for the reproduction of maps for its own use, for such time as it deems fit. No right of sale or transfer of either this license, negative or maps reproduced therefrom, is given, except as to the foregoing license. The right to use or reproduce, or to allow others to use or reproduce this map, is reserved exclusively to the undersigned. Maps reproduced from this negative shall show our copyright." This license, accompanied by the Tobin copyright notice, was printed on the face of the negative, entered as the Government's Exhibit No. 21, and was signed by Tobin.

On or about September 16, 1958, defendant was not authorized or licensed by Tobin to exercise any rights under the said copyrights in these aerial survey maps, but he did sell to one Gordon Kroll, without authority from Tobin, copies of aerial survey maps covered by Tobin copyrights. It was established at the trial that this sale of maps was made by defendant to Kroll and that the copies sold by defendant were not produced at the Tobin plant. The copies sold by defendant bore the copyright notice "Edgar © Tobin" in various places on their faces. It has been stipulated that the late Edgar Tobin, founder of Edgar Tobin Aerial Surveys, died on January 10, 1954.

It is a fundamental rule of statutory construction that penal statutes must be construed strictly, or as it is otherwise stated, strictly construed against the prosecution or strictly construed in favor of the person accused. 82 C.J.S. Statutes § 389, p. 924 and United States v. Resnick, 1936, 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127.

As his first ground for judgment of acquittal, defendant contends that the protection of the copyright law does not extend to the transfer of copies published by and belonging to a lawful licensee of the copyright proprietor and that the latter is left to a breach of contract action against his licensee to enforce any restriction on the transfer of copies embodied in the license. Defendant points out that the record does not show that the copies sold by him were made by him or at his request or how these copies came into his possession. All that has been established is that these copies were not produced at the Tobin plant. Since 107 contract customers were licensed to publish copies of these maps, defendant maintains that it just as well may be assumed that these copies were lawfully published by such a licensee as that they were prepared by defendant. If on the present state of the record a lawful licensee possibly could have published these copies, defendant claims that he should be acquitted, since under his theory of the law, the sale of maps lawfully published by a licensee, but transferred in violation of a license restriction, would not constitute an infringement of the copyright.

The Government contends that the protection of the copyright law does extend to the transfer of copies published by and belonging to a lawful licensee of the copyright proprietor on the theory that any willful and knowing resale of piratical copies is a violation of the law. A copy is defined by the Government as "piratical" if the copyright proprietor has been denied the opportunity of exercising his exclusive right to vend that particular copy and has not authorized such vending. Thus it would be a copyright infringement, the Government maintains, for any one to sell a copy published by a lawful licensee if the copyright proprietor specifically had reserved in the license the right of sale or transfer of any copies so published. The rationale would seem to be that the copyright proprietor has not had an opportunity of exercising one time his exclusive vending right over the law-

ful copy and that the fact that the copying was lawful does not make the selling of the copy lawful. The Government claims, therefore, that allegation and proof only of an unauthorized sale of an authorized copy is an infringement and that, since such proof has been offered, the verdict of guilty rendered against defendant should stand.

In the opinion of the court defendant should be acquitted because there has been no showing on the record that the copies of the aerial survey maps were not published by a lawful licensee of the copyright proprietor or that title to these copies was retained at all times by the copyright proprietor.

Title 17 United States Code § 104, states in relevant part:

"Any person who willfully and for profit shall infringe any copyright secured by this title, or who shall knowingly and willfully aid or abet such infringement, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment for not exceeding one year or by a fine of not less than $100 nor more than $1000, or both, in the discretion of the court　＊　＊"

There are few guides to the interpretation of this seldom-used criminal statute. To gain any idea of its coverage or of the protection afforded by the copyright law one must resort to the civil law of copyright and to the provisions of Title 17 as a whole. The basic question of interpretation involved in Section 104 is the meaning of infringement of copyright. Although there is no statutory definition of infringement of copyright, it may be readily inferred from the provisions of Title 17 United States Code § 1(a), conferring upon the copyright proprietor the exclusive right to print, reprint, publish, copy, and *vend* the copyrighted work. (Emphasis supplied). The grant of these exclusive rights implies the prohibition that others shall not exercise them without the consent of the copyright proprietor; to do so

without such consent would be infringement of copyright.

The exclusive right to vend the copyrighted work, however, is not unlimited, since Title 17 United States Code § 27, specifically provides that "　＊　＊　＊ nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained." These provisions are considered to mean that the copyright proprietor is not empowered, merely by virtue of his copyright, to control the sales of published copies after they have come into the lawful ownership of the first purchaser. Whenever the copyright proprietor parts with title to a particular copy, the incident of his statutory monopoly having been exhausted by the exercise of the power of sale, is extinguished; the ordinary incidents of alienation belonging alike to all property attach to the material object in the hands of the new owner; and that copy is no longer under the copyright law insofar as the purchaser's right is concerned. Horace G. Ball, The Law of Copyright and Literary Property (1944) p. 437, et seq. Furthermore, Leon H. Amdur, another copyright authority, states:

"For example, if the title to a copy is transferred to A with an attempted restriction on its use and further sale, and A sells the copy in violation of his agreement to B (who may or may not have knowledge thereof) neither A nor B is liable for infringement. The copyright owner's only recourse would be action for breach of contract or for fraud against A, and the latter action, against B, if B had knowledge of the agreement." Leon H. Amdur, Copyright Law and Practice (1936) at p. 216.

The pivotal issue is whether title to the particular copy has been retained by the copyright proprietor or has passed to a first purchaser. If title has been retained by the copyright proprietor, the copy remains under the protection of the

copyright law, and infringement proceedings may be had against all subsequent possessors of the copy who interfere with the copyright proprietor's exclusive right to vend the copyrighted work. If title has passed to a first purchaser, though, the copy loses the protection of the copyright law as discussed above. The present case involves the relationship between the copyright proprietor and his licensee, which seems to lie between the two clear examples of the purchase and mere possession relationships.

■■■■ Does the protection of the copyright law extend to the transfer of copies published by and belonging to a lawful licensee of the copyright proprietor? A copyright license is a grant of the right to make, use, or sell the copyrighted work; it is an assignment of rights less in degree than the copyright itself. In the present case the right to reproduce the copyrighted work for his own use has been granted and sold to the licensee. The publishing of copies under that license is lawful because the licensee is exercising a property right that has been granted to him. If the licensee owns such a publishing right, can it possibly be argued that he does not own the copies which he publishes in the exercise of that right? Such a limitation on the grant of a right cannot be presumed and must appear on the face of the grant itself. Since the Tobin license does not specify that all copies published thereunder remain the property of the copyright proprietor, it follows that title to all copies published under the license belongs to the licensee and not to the copyright proprietor. Furthermore, it can be argued that the copyright proprietor sold its rights in the copies, just as surely as if it had sold the copies themselves, by selling the right to publish and use such copies for such time as the licensee "deems fit". It is apparent, therefore, that the protection of the copyright law does not extend to the transfer of copies published by and belonging to a lawful licensee of the copyright proprietor under the license in the present case and that the copyright proprietor is left

to a breach of contract action against its licensee to enforce any license restrictions on the transfer of copies. Lacking the protection of the copyright law, there can be no infringement, and defendant should be acquitted.

These logical conclusions are supported by an analysis of the cases. A substantially parallel case is Bobbs-Merrill Company v. Straus, 1908, 210 U.S. 339, 28 S.Ct. 722, 52 L.Ed. 1086, in which the copyright proprietor of a novel sued a retail dealer (Macy's) for infringement of copyright. The copyright proprietor had sold copies of the copyrighted work to wholesalers with a printed notice on the flyleaf of the book that it could not be sold at retail for less than $1, the notice further stating that any one violating such restriction on transfer would be infringing upon the copyright. The defendant, with full knowledge of the restriction, sold the book at retail for less than $1 and was sued for infringement of copyright. The Supreme Court held that the statutory protection of copyright extends only to the original sale by the copyright proprietor and protects his exclusive right in and to such sale, but that the copyright law cannot be used to enforce contracts restricting the purchaser in his transfer of the copyrighted work and that the copyright proprietor's only remedy was for breach of contract.

In the present case only one additional factor is added to the fact situation in the Bobbs-Merrill case, supra, and that is the fact that the purchaser of the copyrighted material is licensed to reproduce it. It logically follows that such reproduced or multiplied copies in the hands of the licensee are lawfully acquired by it and that they are of no different status than a copy purchased from the copyright proprietor. The contractual restriction in the license in the present case prohibits any sale at all, while in the Bobbs-Merrill case, supra, the restriction is to sale at a certain price. Both restrictions apply to transfer, and no legal difference is apparent insofar as the reasoning of the Supreme Court is concerned.

Similarly, in Harrison v. Maynard, Merrill & Co., 2 Cir., 1894, 61 F. 689, a publishing company was the proprietor of a copyright of a certain book, entitled "Introductory Language Work". It entered into a contract with one George W. Alexander to bind this book. In anticipation of orders from the copyright proprietor, Alexander would prepare and bind a number of copies of the book and keep them in storage. Alexander had a fire, and the copyrighted books that were in his possession were thought to be damaged beyond the point where they could be sold, so they were sold as salvage. Alexander's assignee and the purchaser entered into a contract whereby the purchaser was authorized to sell the copyrighted books only as scrap or paper stock. Some time later a number of the damaged copyrighted books turned up for sale, and it was determined that defendant was not using them for scrap or paper stock but was selling them in competition with the copyright proprietor. Defendant testified that he bought the books in the market and had no knowledge of any restriction on their resale (although this does not appear to be material to the court's holding). The court held that the copyright proprietor had parted with title to the copyrighted books and that once that was done, it was not an infringement of copyright for defendant to offer them for sale. The court further held that the copyright proprietor's only remedy was suit for breach of contract. Both the restrictions in the Harrison case and the present case apply to transfer of copies, and no legal difference is apparent insofar as the reasoning of the court is concerned.

The Government's argument is not persuasive, both upon logical analysis and examination of its cases. Basically, its definition of piratical copies is too broad. Though the willful and knowing resale of piratical copies is a violation of the law, a copy may be "piratical" for vending purposes only to the extent of the copyright proprietor's right to vend that particular copy—which depends upon his retention of legal title thereto, as discussed above.

If the copy was lawfully published by and belongs to a licensee, the copyright proprietor no longer has an exclusive right to vend it, and such a copy can hardly be deemed piratical. Furthermore, it can be argued that the copyright proprietor exhausted his right to vend such copies by granting and selling to the licensee the right to publish them. Thus he would have had the opportunity to exercise one time his exclusive right to vend over such copies by the act of granting the license and receiving a consideration therefor. The Government's cases likewise do not support the proposition for which they are cited or are distinguishable. Pellegrini v. Allegrini, D.C.E.D.Pa., 1924, 2 F.2d 610, is concerned with the copying of a copyrighted work by an infringing manufacturer, rather than with the sale of copies lawfully produced by a licensee. Foreign & Domestic Music Corp. v. Licht, 2 Cir., 1952, 196 F.2d 627, similarly involves a wrongful copying, though Judge Learned Hand states at page 629 that one will infringe a copyright if he sells an infringing copy he has purchased. There, though, there is a fundamental and continuing infringement based on copying to which the buyer of such a copy makes himself a party by selling it or performing the work for profit. Henry Bill Publishing Co. v. Smythe, C.C.S.D.Ohio, 1886, 27 F. 914, involved a situation where the copyright proprietor had not parted with title to any of the copies of the copyrighted work and thus could enforce restrictions on its sale by infringement proceedings.

Since the protection of the copyright law does not extend to the transfer of copies published by and belonging to a lawful licensee of the copyright proprietor under the license in this case, there must be a showing on the record that the copies of these aerial survey maps were not published by a lawful licensee of the copyright proprietor or that title to these copies was retained at all times by the copyright proprietor. In the absence of such a showing complete proof of infringement has not been offered, and defendant should be acquitted. Though it

may seem burdensome for the Government to be required to produce the testimony of Tobin's 107 contract customers that the copies were not published under their licenses, this burden is not caused by the requirements of the law but by Tobin's distribution system.

Other grounds urged by defendant in support of his motion for acquittal are not well considered and will not be discussed.

Defendant's motion for judgment of acquittal will be granted. The clerk will notify counsel to draft and submit judgment accordingly.