The PLATT & MUNK CO., Inc., Plaintiff,

v.

REPUBLIC GRAPHICS INC., Defendant.

Civ. 1003.

United States District Court
S. D. New York.

Sept. 12, 1962.

Greenbaum, Wolff & Ernst, New York City, for plaintiff.

George P. Monaghan, New York City, for defendant.

COOPER, District Judge.

This is a motion for a preliminary injunction. In the underlying action, plaintiff alleges copyright infringement and seeks a permanent injunction, damages and other relief. Jurisdiction is vested in this Court by reason of 17 U.S.C.A. § 112 and 28 U.S.C.A. § 1338.

The copyrights allegedly infringed cover certain educational toys, books, puzzles and games designed for children, and plaintiff, as copyright owner, seeks to restrain defendant from "effectuating any sale" of these items.

Defendant, which printed and manufactured the items pursuant to plaintiff's order, asserts that it has a right to sell this trademarked and copyrighted merchandise as an "unpaid seller" within the terms of New York Personal Property Law, McK.Unconsol.Laws, c. 41, §§ 133–141.

Further, defendant contends that under the exception embodied in 17 U.S. C.A. § 27, it may lawfully sell such goods without infringing plaintiff's copyrights.

From the papers before the Court, it appears that plaintiff entered into various agreements with Republic Graphics, Inc. (hereinafter referred to as "Republic") under which Republic contracted to do the printing and related work in connection with plaintiff's copyrighted games. Subsequently, disputes developed with respect to alleged defects in certain of the games manufactured by Republic for plaintiff and with respect to the shipping instructions called for in the agreements. Settlement negotiations proved abortive and the Court must now determine whether or not the facts warrant granting a preliminary injunction.

In addition to the validity of its copyrights, it is, of course, necessary

264

that the plaintiff make out a prima facie case of infringement and that it present facts which indicate a sufficient likelihood of immediate irreparable injury to justify the granting of such relief. Rushton v. Vitale, 218 F.2d 434 (2nd Cir., 1955). Also, plaintiff must demonstrate a likelihood of ultimately prevailing upon a final decision after trial in order to justify the imposition of a preliminary restraint at this juncture. Consolidated Music Publishers, Inc. v. Ashley Publications, 197 F.Supp. 17, 19 (S.D.N.Y.1961).

■ The Court concludes that plaintiff plainly presents a prima facie case entitling it to preliminary injunctive relief against defendant so as to protect it from further injury pending the determination of this action.

■ Upon the papers before the Court, it appears that defendant is not an "unpaid seller" within the meaning of the Personal Property Law of the State of New York and may not avail itself of the rights provided under § 141 of that law. See Wise v. Rand-McNally Co., 195 F.Supp. 621 (S.D.N.Y.1961). Even if defendant were such a seller it is doubtful that such status would afford it license to infringe.

It further appears that Republic at no time secured title to the copyrighted items in question from Platt and Munk and that Republic in no sense comes within the exception governing a transfer of copies of copyrighted works which is set forth in 17 U.S.C.A. § 27.

■ For Republic to have had "lawful possession" of copies for the purposes of transfer within the meaning 17 U.S.C.A. § 27, there must previously have been a sale or transfer of such copies by the copyright proprietor. See United States v. Wells, 176 F.Supp. 630, 633–634 (D.C. Tex.1959); Henry Bill Publishing Co. v. Smythe, 27 F. 914 (S.D.Ohio 1886).

■ Hence, it appears that so far as the alleged infringement is concerned, Republic's sale of the copyrighted items may not be validated on the basis of the provisions of 17 U.S.C.A. § 27. United States v. Wells, supra.

The anomalous results which would flow from the theory for which defendant in part contends seem apparent. Carried to its ultimate conclusion, it would mean that even merchandise printed or produced defectively could, nevertheless, be sold by the printer or contractor on the open market without infringement of the trademark or copyright owner's rights. Such a result seems bizarre and plainly at odds with the statutory scheme of copyright protection.

In accordance with Rule 52, F.R.Civ. P., 28 U.S.C.A. the Court sets forth the following findings of fact and conclusions of law as constituting the grounds for its granting of plaintiff's motion for a preliminary injunction:

FINDINGS OF FACT:

1. Plaintiff is engaged in the business of manufacturing, publishing, distributing and marketing books, children's educational toys, puzzles, games and similar products.

2. Plaintiff is the sole copyright proprietor and the owner of the trademark and all other rights in the following items of educational activity toys which are sometimes sold separately as the BLACKBOARD BOOK OF NUMBERS and the BLACKBOARD BOOK OF LETTERS, respectively and sometimes sold in combination as the BLACKBOARD LIBRARY:

BLACKBOARD BOOK OF NUMBERS – c̄ Registration No. A402623
Certificate dated July 13, 1959

BLACKBOARD BOOK OF LETTERS – c̄ Registration No. A402624
Certificate dated July 13, 1959

3. Plaintiff is and has been the sole copyright proprietor and the owner of the trademark and all other rights in the following items of educational activity toys which are sometimes sold separately as the UNITED STATES MAP— People and Places and the UNITED STATES MAP—Products and Resources, respectively, and sometimes sold together as the UNITED STATES MAP PUZZLES:

UNITED STATES MAP– People and Places — $\overline{c}$ Registration No. K62959 Certificate dated June 15, 1961

UNITED STATES MAP– Products and Resources — $\overline{c}$ Registration No. K62960 Certificate dated June 15, 1961

———◆———

4. Prior to June 26, 1961 plaintiff created a toy under the name of I CAN PRINT which is an educational activity toy consisting of 3 sets of alphabet type, a holder, an ink pad, a printed work entitled "I Can Print Fun Book", an instruction folder and instruction greeting cards and envelopes. Plaintiff is the owner of the trademark and of all other rights in I CAN PRINT and is the sole copyright proprietor of the following components of I CAN PRINT:

Box and Greeting Cards– $\overline{c}$ Registration No. KK161011 Certificate dated June 26, 1961

Instruction Folder — $\overline{c}$ Registration No. A518568 Certificate dated June 26, 1961

———◆———

5. Each of the aforesaid items has been advertised in plaintiff's annual catalogs and has been marketed, sold and distributed with appropriate copyright notices required by the United States Copyright Act. Each of the aforesaid items bears plaintiff's trademarks.

6. On or about August 25, 1960 plaintiff and defendant entered into an agreement pursuant to which defendant agreed to manufacture 25,000 sets of the UNITED STATES MAP PUZZLE for plaintiff.

7. On or about January 10, 1961 plaintiff and defendant entered into an agreement pursuant to which defendant agreed to manufacture for plaintiff 25,000 sets of the BLACKBOARD LIBRARY, each set consisting of the BLACKBOARD BOOK OF NUMBERS and the BLACKBOARD BOOK OF LETTERS, plus 15,000 slipcover cases. Thereafter, on or about September 15, 1961, plaintiff ordered from defendant 25,000 more copies each of the BLACKBOARD BOOK OF NUMBERS and BLACKBOARD BOOK OF LETTERS, plus 25,000 of the slipcover cases.

8. On or about January 10, 1961 plaintiff and defendant entered into an agreement pursuant to which defendant agreed to manufacture for plaintiff 50,000 I CAN PRINT sets.

9. The agreement between the parties with respect to delivery of each of the aforesaid items was that defendant would promptly proceed with manufacture so that goods would be ready and on hand by April or May 1961, that defendant would store the completed goods at its expense until called for by plaintiff and that plaintiff would only pay for goods as and when called for by it and after delivery to it.

10. After defendant commenced delivery of the BLACKBOARD BOOK OF LETTERS and the BLACKBOARD BOOK OF NUMBERS, disputes arose

between the parties concerning plaintiff's claim that quantities of the merchandise were defective.

11. After defendant commenced delivery of I CAN PRINT, other disputes arose between the parties. Plaintiff claimed that the printing set produced by defendant did not meet plaintiff's standards of marketability because the plastic type and type-face manufactured by defendant did not and could not produce a satisfactory impression on paper and therefore plaintiff would be unable to sell it to its customers who, in purchasing educational activity toys from plaintiff, expected to pay advertised prices for merchandise of a quality which would perform as advertised.

12. Plaintiff claims that defendant's misrepresentations and breaches of warranty caused it to withdraw the I CAN PRINT set from sale in or about November 1961, in order to protect plaintiff's reputation in the trade and among its customers as a reputable manufacturer, publisher and distributor of educational activity toys.

13. On or about January 19, 1962 defendant attempted to deliver in bulk all of the items it had stored on its premises. Plaintiff refused to accept such delivery, claiming that the same was contrary to the various agreements regarding delivery, that large numbers of the BLACKBOARD items were defective and that I CAN PRINT was useless for its purposes.

14. On or about January 29, 1962 defendant threatened to dispose of all the aforesaid merchandise by placing the same upon the market. Plaintiff protested by letter stating that such threatened actions by defendant, if carried out, were in violation of plaintiff's rights as the owner of the trade-marks and proprietor of the copyrights.

15. On or about February 20, 1962 defendant claimed the right to sell all of the aforesaid merchandise as an "unpaid seller". Plaintiff protested by letter that defendant was not an unpaid seller and that such sale would violate plaintiff's rights as the trade-mark and copyright proprietor.

16. Notwithstanding the foregoing, defendant thereafter sold quantities of the aforesaid items to various third parties and remains in possession of additional quantities of each of the aforesaid items which it threatens to sell in the open market at prices substantially less than plaintiff's catalog prices.

17. Plaintiff has made out a prima facie case that such sales by defendant have caused plaintiff irreparable injury and that the threatened continuation of such sales will cause further irreparable injury to plaintiff's rights as the sole proprietor of the copyright including the rights to copy and to vend and as the owner of the trademarks and to plaintiff's reputation in the toy business as a manufacturer, publisher and distributor of merchantable goods and will flood the market with defective merchandise identifiable in the trade as plaintiff's products and will injure plaintiff's competitive position.

18. Under all the circumstances, it is improbable that money damages would be an adequate remedy for the impairment or possible destruction of the market which plaintiff has built up for its product. The loss of such market might well be irreparable. Moreover, the difficulties of detecting particular instances of sales in violation of copyright and of computing the exact amount of damages suffered would likely prove insurmountable.

## CONCLUSIONS OF LAW:

Upon the papers before the Court it appears that:

1. Plaintiff is the holder of valid copyrights on the merchandise in question.

2. Defendant's sale of such merchandise constitutes an infringement of plaintiff's copyrights and of plaintiff's exclusive right to vend such merchandise.

3. Defendant does not occupy the status of an "unpaid seller" within the meaning of New York Personal Property Law §§ 133–156.

4. Defendant's sale of the copyrighted goods constitutes an infringement of plaintiff's copyright and does not fall within the exception found in 17 U.S.C.A. § 27.

5. Plaintiff is entitled to an injunction, pending the determination of this action, restraining defendant, its agents, servants, employees, attorneys and all persons in active concert and participation with it from taking any steps to manufacture or to effectuate any sale of any of the plaintiff's following merchandise: I CAN PRINT: UNITED STATES MAP SETS–People and Places, Products and Resources; and BLACKBOARD BOOK OF NUMBERS and BLACKBOARD BOOK OF LETTERS, sometimes sold together as the BLACKBOARD LIBRARY.

Settle order on notice. Plaintiff must file security in the amount of $3,000. in accordance with the provisions of Rule 65, F.R.Civ.P., 28 U.S.C.A.