**BEECHWOOD MUSIC CORPORATION**
and Ardmore & Beechwood,
Limited, Plaintiffs,

v.

**VEE JAY RECORDS, INC., and Malverne**
**Distributors, Inc., Defendants.**

United States District Court
S. D. New York.
Feb. 7, 1964.

Halperin, Morris, Granett & Cowan, New York City, for plaintiffs.

Walter Hofer, New York City, for defendants.

EDELSTEIN, District Judge.

This matter came on to be heard on the motion of plaintiffs Beachwood Music Corporation ("BMC") and Ardmore & Beechwood, Limited ("Ardmore") for a preliminary injunction against the defendants Vee Jay Records, Inc. ("Vee Jay") and Malverne Distributors, Inc. ("Malverne"). The court, after having duly considered the verified complaint, the answer, affidavits, memoranda of law, and other documents submitted in connection with the plaintiffs' motion makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Plaintiff Ardmore is a joint stock company organized under the laws of England and is the owner of the valid and subsisting United States copyrights in and to two musical compositions entitled "Love Me Do" and "P.S. I Love You."

2. The plaintiff Beechwood is a corporation organized under the laws of the State of California and is authorized to do business in New York. It is licensee of the copyrights to the musical compositions "Love Me Do" and "P.S. I Love You" with regard to mechanical reproduction and sale of phonograph records and the licensing thereof in the United States.

3. Defendant Vee Jay is a corporation organized under the laws of Illinois and is doing business in New York. Defendant Malverne is a New York corporation and is engaged in distributing Vee Jay records in New York.

4. On January 16, 1964, a temporary restraining order was issued enjoining the defendants from manufacturing or distributing a certain long-playing phonograph record entitled "Introducing the Beatles," which embodied the two compositions "Love Me Do" and "P.S. I Love You." The order contained a direction that a hearing in connection with plaintiffs' application for preliminary injunction herein be held on January 21, 1964.

5. The motion for a preliminary injunction came on to be heard before this court on January 21, 1964, at which time, upon request of defendants' counsel, the motion was adjourned to January 24, 1964, with the restraining order continuing in force until the hearing date.

6. On the hearing date counsel for the parties duly stipulated that the temporary restraining order continue in full force and effect for an additional ten days, or until February 5, 1964.

7. The plaintiffs have not approved or authorized the mechanical reproduction or mechanical use or commercial release of either of the subject compositions, "Love Me Do" or "P.S. I Love You," in the United States.

8. On January 12, 1963, Trans-Global Music Co. Inc. ("Trans-Global"), licensed to defendant Vee Jay certain "master" recordings embodying performances of a singing group known as "The Beatles." But the agreement did not grant to Vee Jay copyright license rights in and to any specific compositions.

9. Trans-Global did not have copyright license rights to "Love Me Do" and "P.S. I Love You" and the agreement provided that Vee Jay was required to obtain its own copyright licenses in any specific compositions and was to be solely responsible therefor to the copyright proprietors of any of the musical compositions which it sought to record or reproduce.

10. The business relationship of Electric and Musical Industries, Ltd., ("EMI"), a British corporation, BMC and Ardmore, on the one hand, and EMI and Trans-Global on the other hand, does not represent or create the kind of continuing business connection or close and sustaining business association so as to make EMI and Trans-Global alter egos of plaintiffs, thereby making the acts of Trans-Global the acts of the plaintiffs acting through EMI and Trans-Global.

11. Ardmore has used or permitted, licensed, or knowingly acquiesced in the commercial release of phonograph records embodying the musical compositions entitled "Love Me Do" and "P.S. I Love You" in the United Kingdom and elsewhere.

12. On January 9, 1964, defendant Vee Jay requested of plaintiff BMC that it issue to Vee Jay a license for mechanical use of the two subject musical compositions in connection with the manufacture and sale of phonograph records by Vee Jay.

13. On January 10, 1964, plaintiff BMC duly notified Vee Jay by telegram of its refusal to issue such license.

14. On January 10, 1964, plaintiff BMC by telegram advised the defendants, *inter alia*, that the manufacture and sale of phonograph records embodying the two subject musical compositions was unauthorized and constituted an infringement of plaintiffs' copyrights. The plaintiff BMC thereupon demanded that defendants cease and desist from proceeding with the manufacture and distribution of phonograph records containing performances of the subject compositions.

15. On January 16, 1964, and prior to the service of the aforementioned restraining order, defendants manufactured and distributed for sale to the public the long-playing phonograph record entitled "Introducing the Beatles." This record embodies the subject musical compositions. Defendants manufactured and recorded these two compositions with notice of plaintiffs' claim that the plaintiffs' license was required in order for the defendants to lawfully do so, and with notice that the plaintiffs had refused to issue such a license.

16. The defendants intend to and will continue to produce, manufacture, distribute and sell phonograph records embodying the compositions "Love Me Do" and "P.S. I Love You" unless restrained by this court.

17. Plaintiffs have suffered and will continue to suffer immediate and irreparable injury, loss and damage if their exclusive rights to use, or to authorize the use of the two musical compositions on phonograph records in the United States are not protected by an order of this court, restraining the manufacture, sale and distribution of such phonograph records by the defendants.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties.

2. This court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1338(a) [1] (1952) and 17 U.S.C. § 112.[2]

3. Pursuant to § 1 of the Copyright Act, 17 U.S.C. § 1 et seq., plaintiffs are the owners and holders of the exclusive right to use, or to authorize use of the musical compositions "Love Me Do" and "P.S. I Love You" in the United States in connection with mechanical reproduction of said compositions on phonograph records and the sale and/or distribution thereof.

4. The plaintiffs are not estopped from asserting their right to restrain the unauthorized and unlicensed mechanical reproduction and sale of phonograph records containing the subject musical compositions in the United States by the defendants.

5. Section 1(e) of the Copyright Act, 17 U.S.C. § 1(e), containing the so-called "compulsory license" provision, does not provide authority for defendants to make mechanical reproductions of plaintiffs' musical compositions in the United States, as a result of the manufacture and sale of records embodying the subject musical compositions in the United Kingdom.

6. The defendants' acts in manufacturing and distributing a certain long-playing phonograph record entitled "Introducing the Beatles" embodying recorded performances of the two musical compositions, without license of either of the plaintiffs, constitutes copyright infringement.

7. A balance of conveniences and equities, including the likelihood of plaintiffs' success at trial indicates that the plaintiffs are entitled to a preliminary injunction in conformity with these findings.

8. The plaintiffs have no adequate remedy at law.

9. The plaintiffs have made out a prima facie case that they are entitled to a preliminary injunction pending a determination of this action, restraining defendants, its agents, servants, employees, and attorneys and all persons in active concert and participation with them from in any manner, either directly or indirectly, manufacturing, selling, shipping, marketing and/or distributing

---

1. 28 U.S.C. § 1338. Patents, copyrights, trade-marks, and unfair competition.

"(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases."

2. 17 U.S.C. § 112. Injunctions; service and enforcement.

"Any court mentioned in section 1338 of Title 28 or judge thereof shall have power, upon complaint filed by any party aggrieved, to grant injunctions to prevent and restrain the violation of any right secured by this title, according to the course and principles of courts of equity, on such terms as said court or judge may deem reasonable. Any injunction that may be granted restraining and enjoining the doing of anything forbidden by this title may be served on the parties against whom such injunction may be granted anywhere in the United States, and shall be operative throughout the United States and be enforceable by proceedings in contempt or otherwise by any other court or judge possessing jurisdiction of the defendants."

a certain long-playing phonograph record entitled "Introducing the Beatles" embodying recorded performances of either or both of the musical compositions entitled "Love Me Do" and P.S. I Love You," or any other phonograph records containing either or both of said musical compositions, provided that plaintiffs first give security in the sum of $5,000.00 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined. See Fed.R. Civ.P. 65(c).

## DISCUSSION

Defendants by their answer have entered general appearances and have admitted the following material allegations of the complaint: that Vee Jay is doing business in the State of New York (Complaint ¶4); that defendant Malverne is engaged in distributing Vee Jay phonograph records in the State of New York (Complaint ¶5); that the plaintiff Ardmore's copyrights are valid and subsisting (Complaint ¶10); that defendant Vee Jay requested a license to use the musical compositions "Love Me Do" and "P.S. I Love You" on January 9, 1964, and that plaintiff BMC refused to issue said license to Vee Jay on January 10, 1964, (Complaint ¶13). Vee Jay also has admitted the manufacture without a license of a long-playing record entitled "Introducing the Beatles" and has further admitted that this record embodies a recorded performance of "Love Me Do" and "P.S. I Love You", (Complaint ¶14). A copy of the alleged offending record has been submitted as an exhibit. The sales slip indicates that it was purchased at Alexander's Department Store in the New York area, and the defendants' counsel admitted at the hearing that over 75,-000 copies of this record had been sold to distributors by the defendant Vee Jay. Defendants have also admitted by their answer that on January 10, 1964, defendant Malverne received actual notice via plaintiff BMC's telegram that the Beatles album contained unlicensed musical compositions. (Answer ¶4).

Defendants have raised two affirmative defenses for their admitted use without a license of plaintiffs' two compositions: (1) that because an alleged business associate or affiliate of plaintiffs' alleged parent, EMI, i. e., Trans-Global, has licensed Vee Jay to produce master phonograph records performed by the Beatles, plaintiffs are therefore estopped from preventing the defendants from enjoying the benefits of the Trans-Global agreement, and (2) that defendants are entitled to a "compulsory license" to these compositions pursuant to 17 U.S.C. § 1 (e),[3] as a result of the commercial release of "Love Me Do" and "P.S. I Love You" in Great Britain. These defenses are insubstantial and without merit.

The claimed infringement herein is of the right of the copyright proprietor to

---

3. 17 U.S.C. § 1(e) provides in part:
"To perform the copyrighted work publicly for profit if it be a musical composition; and for the purpose of public performance for profit, and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced: *Provided,* That the provisions of this title, so far as they secure copyright controlling the parts of instruments serving to reproduce mechanically the musical work, shall include only compositions published and copyrighted after July 1, 1909, and shall not include the works of a foreign author or composer unless the foreign state or nation of which such author or composer is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States similar rights. *And as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof * * *."* (Emphasis supplied.)

make and sell mechanical reproductions of the copyrighted work or to license others to do so. This "mechanical reproduction" right has been transferred by Ardmore to its licensee, BMC. Section 1(e), under which defendants claim a compulsory license, provides that when the copyright proprietor has used the work to make a mechanical reproduction or licensed another to do so, any person may make similar use of the work upon payment to the owner of the two cents statutory royalty provided by that section. If the owner uses or licenses the work for a mechanical reproduction he must then file a notice in the Copyright Office. A failure to do so is a complete defense to any suit, action or proceeding for infringement of the mechanical rights. See 17 U.S.C. § 1(e). But see Norbay Music, Inc. v. King Records, Inc., 290 F.2d 617 (2d Cir. 1961). The defendants have attempted to place a novel gloss upon the compulsory license provision of the Act. Because the Copyright Act contains no specific language indicating a territorial limitation, the defendants have made the bare allegation that the Act is not intended to be limited in its application to the mechanical reproduction of musical compositions in the United States. They urge that any American manufacturer has the right to reproduce the composition merely by serving the statutory notice upon the copyright owner, or, as in this case, its licensee BMC, once the musical compositions are mechanically reproduced in England or elsewhere abroad.

The defendants seek to persuade the court to accept this extreme and far-reaching construction of the Copyright Act merely by suggesting it and snatching at strained inferences but they have failed completely to enlist the aid of any authority to support their theory of statutory construction. The defendants' negative argument that Congress intended to extend the "compulsory license" provisions of the Copyright Act to American manufacturers predicated upon mechanical reproductions outside the United States of America is utterly unconvincing. What the defendants are contending, in effect, is that a mechanical reproduction of "Love Me Do" and "P.S. I Love You" anywhere in the world, even at its farthermost corners, entitles all American manufacturers to exploit the compositions in the United States. Merely to state the proposition is sufficient to reveal its vices because its application gives rise to a host of deleterious consequences to a copyright owner's bundle of rights.

Extraterritorial application would involve a serious limitation on the copyright proprietor's legal monopoly for it would deprive him of his initial selection of a performer or group of performers who, in the copyright owner's judgment and taste, would insure the maximum commercial success of its composition. This disadvantage in the case of an American copyright licensee, would arise upon the commercial release of the composition in England inasmuch as American manufacturers could then flood the market before the owner's American licensee had made its own release.

The possible loss in initial sales volume on a record's first "run" is not the sole harm which could befall the copyright owner if defendants' construction of the Act were to be given currency. The loss of "initial exclusivity" could also result in equally serious deprivation. For, extraterritorial application would mean that competitors of the copyright proprietor—rather than the proprietor and its licensee—would be in a position, for all practical purposes, to dictate the terms concerning promotion and publicity of the initial American release of the copyright proprietor's composition. The right of initial selection enables the copyright owner to control the quality of artistic performance and the quality of the commercial product, at least at the time of the composition's initial entry into the mechanical reproduction market. Business judgment also plays a large part in the copyright owner's initial selection of a commercial and artistic release. The copyright proprietor should be free to seek a mechanical reproduction by a com-

pany which he believes is best equipped to give the composition the advertising and promotion essential to success. The plaintiffs, pursuant to their right and in the exercise of their judgment and taste, chose not to license Vee Jay and the "Beatles" to perform "Love Me Do" and "P.S. I Love You." This decision, based on the conviction that commercial release in England did not render operative the American Copyright Act's compulsory license provision, must be respected. To hold otherwise would be to approve a "twist and turn" rule of copyright law— one whereby the copyright owner's financial and artistic success is not within his own control but stands and falls on the business judgment, acumen and taste of a myriad of faceless competitors who merely wait to pounce and prey once the refrain from the mechanical reproduction is heard from abroad.

■ Defendants' contention that the Universal Copyright Convention somehow grants them the right to exploit plaintiffs' works without a license misconceives the effect of the Convention. 17 U.S.C. § 9(c). See generally Bogsch, The Universal Copyright Convention (1958); Universal Copyright Convention Analyzed (Kupferman & Foner ed. 1955). The essential feature of the Convention is non-discrimination by member nations; a member nation must accord works protected by the Convention the same protection that it grants to domestic works. The Convention is a "multilateral compact [which] provides for protection and permits freer flow of copyrightable matter among the contracting states." See Milgrim, Territoriality of Copyright: An Analysis of Assignability under the Universal Copyright Convention, American Society of Composers, Authors and Publishers, Twelfth Copyright Law Symposium 1 (1963). The Convention deals with reciprocity in the registration and exploitation of foreign created copyrights and does not provide for the exportation or extraterritorial application of the copyright laws of the member nations.

A review of the authorities has uncovered no support for the contention that the Copyright Act itself, and § 1(e) in particular, has the extraterritorial effect claimed for it. Cf. Henn, The Compulsory License Provisions of the United States Copyright Law 9–14 (1957), a study prepared for United States Copyright Office. See Ferris v. Frohman, 223 U.S. 424, 434, 32 S.Ct. 263, 56 L.Ed. 492 (1912); Capitol Records, Inc. v. Mercury Records Corp., 221 F.2d 657 (2d Cir. 1955); American Code Co., Inc. v. Bensinger, 282 F. 829 (2d Cir. 1922); Famous Music Corp. v. Seeco Records, Inc., 201 F.Supp. 560, 569 (S.D.N.Y. 1961).

■ Defendants' second contention, that plaintiffs are estopped from asserting their rights against defendants is unfounded. No showing has been made of any close tie between BMC, Ardmore, EMI and Trans-Global from which the court can infer that the license by Trans-Global to Vee Jay was in fact plaintiffs' license. But assuming *arguendo* a close link between Trans-Global, plaintiffs and EMI, it is evident that the Trans-Global-Vee Jay contract relating to "master" recordings does not operate as an estoppel against plaintiffs' rights. The master license contract between Vee Jay and Trans-Global required Vee Jay to obtain its own copyright licenses and Vee Jay was to be solely responsible to the copyright proprietors "of any musical compositions embodied upon the master recordings so licensed for mechanical reproduction." [4] Thus the Trans-Global-Vee Jay contract relates only to the reproduction of the artists' performances and not to the reproduction of such performances by Vee Jay without first Vee Jay obtaining a license from the copyright owner.

■ In sum, then, the defendants have failed to persuade the court to deny plaintiffs the relief they seek. The plaintiffs have made out a prima facie case

---

4. See plaintiffs' memorandum of law, pp. 14–15. Defendants' memorandum of law, p. 10.

for preliminary injunctive relief, i. e., that their copyrights are valid and are being infringed. Rushton v. Vitale, 218 F.2d 434 (2d Cir. 1955); Platt & Munk Co. v. Republic Graphics, Inc., 218 F. Supp. 262 (S.D.N.Y.1962), aff'd. as modified, 2 Cir., 315 F.2d 847 (2d Cir. 1963), and they have further demonstrated the likelihood of their success upon a trial of the action. See Consolidated Music Publishers, Inc. v. Ashley Publications, 197 F.Supp. 17, 19 (S.D.N.Y.1961).

Accordingly, the plaintiffs' motion for a preliminary injunction is granted. Plaintiffs are required to post security in the amount of $5,000.00. See Fed.R. Civ.P. 65(c). Settle order on notice.