## WILDER *v.* KENT and others.

(*Circuit Court, W. D. Pennsylvania.* February 2, 1883.)

1. EXECUTION—LEVY—WHAT ARTICLES EMBRACED.

   A sheriff's levy described the premises as "having erected thereon a large two-story brick building, known as the Corry Wooden-ware Works, with machinery for manufacturing tubs, pails, etc., large boilers and engine, pulleys, shafting, belting," etc. *Held,* that the levy embraced two patented machines, although loose and portable, used in the works in the ordinary course of the manufacture of tubs and pails, to paint or grain designs thereon and thus finish them for the market.

2. SAME—WHAT PASSES WITH PATENTED MACHINE.

   Whatever right to use a patented machine the defendant in an execution may have, passes with the machine to the purchaser upon a sale thereof by the sheriff.

In Equity.

*Bakewell & Kerr* and *J. M. Stoner,* for complainant.

*George H. Christy,* for respondents.

Before MCKENNAN and ACHESON, JJ.

ACHESON, J. In Pennsylvania, as between vendor and vendee, heir and executor, and debtor and execution creditor, machinery, whether fast or loose, of a manufactory, which is a constituent part thereof for the purposes of the business there conducted, and without which the establishment would not be fully equipped, is a fixture, and passes as a part of the freehold. *Voorhis* v. *Freeman,* 2 Watts & S. 116; *Ege* v. *Kille,* 84 Pa. St. 333; *Morris' Appeal,* 88 Pa. St. 368. That the two graining machines, the subject-matter of this suit, although loose and portable, were fixtures, within the above-stated principle, we incline to think. But, in our apprehension of the case, it is not necessary to pass definitely upon that question. The sheriff's levy upon the real estate, after describing the factory lot, proceeds thus: "And having erected thereon a large two-story brick building, known as the Corry Wooden-ware Works, *with machinery for manufacturing tubs, pails, etc.,* large boilers and engine, pulleys, shafting, belting," etc.

Now, the two graining machines were then used in said works in the ordinary course of the manufacture of tubs and pails, to paint or grain designs thereon, to finish the vessels, and make them marketable wares. Clearly they were within the scope of the levy. In *Voorhis* v. *Freeman, supra,* where the sheriff's vendee claimed duplicate detached rolls, the premises having been described as "a lot or

piece of ground, with one iron rolling-mill establishment situate thereon, with the buildings, *apparatus,* steam-engine, boilers, bellows, etc., attached to the said establishment," Chief Justice GIBSON said: "And, were it necessary, we would further hold that they might have passed, had they been chattels, by force of the word 'apparatus' in the description of the premises." So, in this instance, we decide without hesitation that, under the sheriff's levy, sale, and deed, the title to the two graining machines vested in his vendee as part of the designated machinery.

Each machine is a patented apparatus constructed ,under letters patent granted by the United States to John R. and Alfred J. Cross. The plaintiff, David H. Wilder, having acquired the exclusive territorial right to the patent for the counties of Erie and Warren, Pennsylvania, set up said two machines (one of which he bought from one of the patentees and the other of which he constructed himself) in the Corry Wooden-ware Works, in the said county of Erie. They were there operated under the patent for a number of years by Wilder & Howe and the Corry Manufacturing & Lumber Company, (of both which concerns the plaintiff was a member,) and by the plaintiff individually, he having eventually become the sole owner of the works and machinery, including the machines in question. Afterwards, upon an execution against Wilder, the sheriff levied upon the works and machinery, and sold the same to Adams Davis, one of the defendants. The sheriff's sale, as already shown, embraced the two graining machines, and under the title thereby acquired the defendants are operating them at said works. This is the alleged infringement of which Wilder complains.

We are therefore called upon to decide what rights a purchaser at sheriff's sale takes in a patented machine belonging to and sold as the property of the owner of the patent,—the defendant in the execution. The learned counsel agree that the question has never been judicially determined; and upon diligent search no case has been found involving the precise point now presented for decision. In *Sawin* v. *Guild,* 1 Gall. 485; 1 Robb, 47, the sheriff, upon an execution against the patentee, levied on and sold the "*materials*" of several of the completed patented machines, and such sale was held to be no infringement of the patent-right.

"He sold," said Mr. Justice STORY, "the *materials* as such, to be applied by the purchaser as he should by law have a right to apply them. The purchaser must therefore act at his own peril, but in no respect can the officer be responsible for his conduct."

The specific ruling in *Chambers* v. *Smith*, 5 Fisher, 12, was that a purchaser at a marshal's sale of a patented machine was an infringer in operating it outside of the district to which its use was limited by the license granted to the defendant in the execution.

The position taken by the plaintiff's counsel is that when the owner of a patent, who does not manufacture for sale, makes a machine for his own use only, and such patented machine is sold at a forced sale by the sheriff, the right to use it does not pass with it, but only the ownership of the materials of which the machine is constructed. To sustain this proposition reliance is placed upon the cases of *Stephens* v. *Cady*, 14 How. 528; and *Stevens* v. *Gladding*, 17 How. 477, in which it was held that the seizure and sale of the copperplate of a copyrighted map, under an execution against the owner of the copyright and plate, did not carry with it the right to print and publish the map. But the reason assigned for this is that the copyright—the exclusive and intangible right to multiply copies of the original work—does not inhere in and has no necessary connection with the plate, which is the mere instrument for producing the copies. The copyright and the plate are wholly distinct and disconnected subjects of property, each capable of being owned and transferred independent of the other, (Id.,) and therefore a judicial sale of the one does not carry any title to the other.

But the lawful sale of a patented machine takes it out of the monopoly, either altogether or *pro tanto*, according to the nature of the contract. The purchaser of a machine from the patentee acquires no right in the patent itself, and needs none to enable him to enjoy his acquisition. By implication he is invested with a license to use that particular machine, and, in the absence of express stipulation to the contrary, such license passes with the machine to successive owners as an incident of proprietorship. That such is the law in case of a voluntary sale of a patented machine by the patentee is incontrovertible. But wherefore should the rights of the sheriff's vendee, under an execution against the patentee, be less than those of a purchaser directly from the patentee? The rule is that the purchaser at a sheriff's sale succeeds to the beneficial rights of the defendant in the execution to the property sold. *Chambers* v. *Smith*, *supra*. But why should an exception be made where the subject-matter of sale is a patented machine? To deny to the sheriff's vendee the right to use such machine would in effect prevent its sale upon an execution at law, as an operative apparatus, and practically withdraw it from the reach of the owner's execution creditors. The

mischievous consequences to such creditors to which the doctrine contended for would lead (now that patented machinery has come into almost universal use) can hardly be estimated. The plaintiff's position is untenable. It is very true that the patent-right itself, being incorporeal and resting exclusively upon statutory grant, cannot be levied on at law, and is available to creditors only by proceedings in a court of equity. *Ager* v. *Murray,* 105 U. S. 126. But a patented machine is susceptible of manual seizure, and the unrestricted sale thereof does not involve the transfer of any interest in the patent. The conclusion, therefore, is that whatever right to use the patented machine a defendant in an execution may have, passes with the machine when sold by the sheriff to his vendee; hence it follows that the plaintiff has no just cause of complaint against these defendants.

The foregoing views being decisive of the case, it is unnecessary to consider the other questions which the counsel have so ablv discussed.

McKENNAN, J. I concur fully in the foregoing opinion.

PER CURIAM. Let a decree be drawn dismissing the plaintiff's bill, with costs.