315 F.2d 847
 137 U.S.P.Q. 268
 The PLATT & MUNK CO., Inc., Plaintiff-Appellee,
v.
REPUBLIC GRAPHICS, INC., Defendant-Appellant.
The PLATT & MUNK CO., Inc., Plaintiff-Appellee,
v.
PLAYMORE, INC., Lederer Industries, Inc. and J. C. Boyan
Associates, Inc., Defendants-Appellants.
 Nos. 221, 241, Dockets 27867, 27904.
 United States Court of Appeals Second Circuit.
 Argued Jan. 23, 1963.
Decided March 21, 1963, On Rehearing April 3, 1963.
 
 Donald A. Jelinek, George P. Monaghan, New York City, for defendant-appellant Republic Graphics, Inc.
 Martin C. Greene, Aberman & Greene, New York City (Arnold L. Fein, New York City, of counsel), for defendant-appellant Playmore, Inc.
 Perry Gottlieb, New York City, for defendant-appellant Lederer Industries, Inc.
 John A. Wiener, Greenbaum, Wolff & Ernst, New York City (Julia Perles, New York City, of counsel), for plaintiff-appellee.
 Before FRIENDLY, KAUFMAN and MARSHALL, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 The question is whether an unpaid manufacturer of copyrighted goods, which are alleged to be defective by the copyright proprietor who has ordered them, may sell them in satisfaction of his claim for the contract price without infringing the 'exclusive right' of the proprietor to 'publish * * * and vend the copyrighted work,' 17 U.S.C. 1(a); there is a related question as to the rights of persons who have already purchased some of the goods from the manufacturer. It seems exceedingly strange that these questions should arise for the first as is apparently the case, one hundred and seventy-three years after the initial grant of copyright protection by Congress, 1 Stat. 124 (1790), and two hundred and fifty-four after the Statute of Anne, 8 Anne, c. 19 (1709). Whether the lack of precedent is attributable to an unusually high standard of dealing, and of solvency, on the part of copyright proprietors and those manufacturing for them, or to an unaccustomed and unexpressed previous consensus in the profession as to the applicable rule of law, it is none the less remarkable.
 
 
 2
 The issue has arisen in this manner. Plaintiff, The Platt & Munk Co., Inc., a publisher and distributor of educational toys, entered into four contracts with defendant Republic Graphics, Inc., for Republic to manufacture for Platt & Munk 25,000 sets of a United States map puzzle, 50,000 sets of the 'Blackboard Library,' including the 'Blackboard Book of Numbers' and the 'Blackboard Book of Letters,' together with 40,000 slip-cover cases (this item having been the subject of two different orders), and 50,000 sets of another toy called 'I Can Print.' The map puzzle, the two Blackboard Books, and 'I Can Print' were all protected by registered copyrights of which Platt & Munk was the sole proprietor. The contracts were simple letter agreements with no provisions expressly relating to the copyrighted nature of the toys. However, Republic was well aware of Platt & Munk's copyright protection, as is evidenced by, among other things, a letter from it confirming 'that we have served, at your instructions, and have been or will be paid an agreed fee for design services in connection with the following titles and/or the contents, jackets, or box wraps thereof,' 'that with reference to each and all of the above-named works our Company acted in the capacity of an employee for hire of the publisher, The Platt & Munk Co., Inc., as that term is used in the United States Copyright Law (17 U.S.Code)',[1] and that Platt & Munk 'is the sole proprietor of each and all of the above-named works and all rights therein and thereto throughout the world forever including but not by way of limitation the manuscripts, illustrations, and designs thereof, and that no component element created for any of the above-named works will be used by this Company, its assigns or heirs without specific agreement with the publisher and owner thereof, The Platt & Munk Co., Inc.'[2]
 
 
 3
 Platt & Munk's complaint against Republic was filed in the District Court for the Southern District of New York on March 1, 1962, and asserted federal jurisdiction under 28 U.S.C. 1338 and 1400, the provisions of the Judicial Code which govern claims arising under the Copyright Act. It alleged that after Republic began delivery of the Blackboard Books, plaintiff found that a substantial proportion of the contents was damaged in that the chalk and eraser boxes were improperly glued to the covers so that the chalk arrived scattered and broken, and that many of the slip-cover cases also were improperly glued. The complaint further alleged that deliveries of 'I Can Print' demonstrated that a plastic type and type face used by Republic, and previously warranted as being adequate to the task, did not and could not produce a satisfactory impression on paper, and that plaintiff was consequently obliged to withdraw the sets from sale to protect its reputation. The complaint also said that about January 19, 1962, Republic attempted to deliver all the items it had manufactured but Platt & Munk refused to accept delivery because large numbers of the Blackboard items were defective and the 'I Can Print' items were useless; that Republic asserted an intention to protect itself by selling the manufactured merchandise; and that such a sale would infringe plaintiff's copyrights. The complaint sought damages for the alleged breach of contract and an injunction against the threatened sales by Republic; plaintiff obtained a temporary order restraining Republic from sales pending the determination of a motion for an injunction.
 
 
 4
 On March 28, 1962, Platt & Munk filed a second complaint in the Southern District of New York, this time against appellants Playmore, Inc., Lederer Industries, Inc., and J. C. Boyan Associates, Inc. This complaint repeated many of the allegations of the complaint against Republic, including the jurisdictional ones, and claimed in addition that Republic had actually 'disposed of a large part' of the goods manufactured for plaintiff and that defendants (Boyan Associates being alleged to be a wholly owned subsidiary or an affiliate of Republic) had purchased some of them and were selling them; an injunction and damages for copyright infringement were demanded. In this second case too, a temporary restraining order was issued in favor of Platt & Munk.
 
 
 5
 The motions for preliminary injunctions in both actions were adjourned from time to time, initially by consent because of settlement discussions; they ultimately came on for disposition in September, 1962, on the basis of affidavits. Platt & Munk's moving affidavit in the action against Republic challenged Republic's right to make bulk deliveries, claiming that Republic was bound to store the United States map puzzles and the Blackboard Books until Platt & Munk called for them, and supplemented the allegations of the complaint as to the defective character of some of the goods, although it expressed willingness to accept the map puzzles if delivered on requisition rather than in bulk, as it did also with respect to so many of the Blackboard Books as were in salable condition. Republic's opposing affidavit alleged that all deliveries were intended to be made prior to Christmas in 1961, so that Platt & Munk could not properly complain over the bulk delivery in January, 1962, and challenged plaintiff's claim as to defects in the goods.
 
 
 6
 The affidavits in the second action added nothing material.
 
 
 7
 Judge Cooper granted preliminary injunctions restraining the defendants in both actions 'from taking any steps to manufacture or to effectuate any sale' of the copyrighted merchandise; the orders were silent as to the duration of the injunctions or as to the further proceedings contemplated. Republic, Playmore and Lederer have appealed, 28 U.S.C. 1292(a)(1).
 
 
 8
 We put to one side a theory, not discussed in the district judge's opinion but urged to some extent on the argument, that the injunctions may be supported on the basis of injury to plaintiff's reputation through the sale of defective goods bearing its name. It is clear enough that the district court here had jurisdiction of this claim as 'pendent' to plaintiff's suit for copyright infringement, since this was a colorable 'claim of unfair competition * * * joined with a substantial and related claim under the copyright * * * laws.' 28 U.S.C. 1338(b); cf. Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947); American Law Institute, Restatement of Torts, 714. But the judge, although referring to the issue in a rather generalized manner in his findings of fact, reached no conclusion of law in regard to it; as to the map puzzles and at least some of the Blackboard items, moreover, the uncontroverted fact that plaintiff itself continued to sell the merchandise received from Republic and its willingness to receive more would undermine or at least restrict the application of such a theory. The judge appparently rested his decision solely on the ground of copyright infringement, and we shall so consider it.
 
 
 9
 Although defendants have been 'vending' copyrighted works without any express license from the copyright proprietor, it is contended that, despite the exclusive right to vend granted to the proprietor by 1(a) of the Copyright Act, 17 U.S.C. 1(a), they are entitled to do this because of 27 of the Act, expecially its final clause. Section 27 provides:
 
 
 10
 'The copyright is distinct from the property in the material object copyrighted, and the sale or conveyance, by gift or otherwise, of the material object shall not of itself constitute a transfer of the copyright, nor shall the assignment of the copyright constitute a transfer of the title to the material object; but nothing in this title shall be deemed to forbid, prevent or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained.'
 
 
 11
 Since Republic's possession of the goods was 'lawfully obtained' under its contract with Platt & Munk and since, as is quite reasonably asserted, the other defendants through their purchases from Republic have acquired not merely lawful possession of the material objects but title as well, it is contended that 27 precludes invoking the Copyright Act 'to forbid, prevent or restrict the transfer' of the goods here in question.
 
 
 12
 Such a literal reading of the 'but nothing' clause is unacceptable. If lawful possession by another sufficed to deprive the copyright proprietor of his right to control the transfer of the copyrighted objects, any bailee of such objects could sell them without infringing the copyright, whatever his liability for conversion might be. In view of the necessary role played by manufacturers, shippers, and others in producing and distributing copies of copyrighted works, the result in many cases would be that a copyright proprietor could not present his work to the public without risking the loss of part of his copyright protection. True, only the right to vend is involved; the copyright proprietor could still prevent possessors and even owners of the objects from making copies of them. Stevens v. Gladding, 17 How. (58 U.S.) 447, 15 L.Ed. 155 (1855). But 'the author is just as much injured by being deprived of the price of a genuine copy as by having a piratical copy substituted for it.' Henry Bill Pub. Co. v. Smythe, 27 F. 914, 922 (C.C.S.D.Ohio 1886). A literal reading of the clause would mean, moreover, that an innocent purchaser of a copy from a conceded pirate would be free to resell it without liability for infringement. Yet the cases to the contrary are legion. E.g., F. W. Woolworth v. Contemporary Arts, Inc., 344 U.S. 228, 229, 73 S.Ct. 222, 97 L.Ed. 276 (1952); Shapiro, Bernstein & Co. v. Goody,248 F.2d 260, 264 (2 Cir. 1957), cert. denied, 355 U.S. 952, 78 S.Ct. 536, 2 L.Ed.2d 529 (1958); Foreign & Domestic Music Corp. v. Licht, 196 F.2d 627, 629 (2 Cir., 1952) (dictum) (L. Hand, J.); see Latman & Tager, Liability of Innocent Infringers of Copyrights, Study No. 25, prepared for the Subcommittee on Patents, Trademarks, and Copyrights of the Senate Judiciary Committee pursuant to S.Res. 240, 86th Cong., 2d Sess. (G.P.O.1960), at 141, 145; cf.35 U.S.C. 271(a).
 
 
 13
 More reasonable results are reached if the clause is construed in the light of its role as a limitation on the first half of 27, and also with the aid of the explanation proffered by the House Committee on Patents at the time the section was enacted:
 
 
 14
 'Section 41 (of the Act of 1909, which is identical to 27 of the present statute) is not intended to change in any way existing law, but simply to recognize the distinction, long established, between the material object and the right to produce copies thereof. The concluding clause in the section, that 'nothing in this act shall be deemed to forbid, prevent, or restrict the transfer of any copy of a work copyrighted under this act the possession of which has been lawfully obtained', is inserted in order to make it clear that there is no intention to enlarge in any way the construction to be given to the word 'vend' in the first section of the bill. Your committee feel that it would be most unwise to permit the copyright proprietor to exercise any control whatever over the article which is the subject of copyright after said proprietor has made the first sale.' H.R.Rep. No. 2222, 60th Cong., 2d Sess. (1909).
 
 
 15
 In accordance with the Committee's statement, the 'but nothing' clause-- as well as the prior law, which 27 was 'not intended to change in any way'-- has never been regarded by the courts as terminating the proprietor's control over the sale of a copyrighted object merely by virtue of his having allowed another person to obtain lawful possession of it. Thus, it has been held that sale of a book purchased from a merchant who bought it from an agent of the copyright proprietor, where the agent had been entrusted with possession of the book but not with actual authority to sell it, is infringement; 'it does not matter whether the party offering to sell without (the proprietor's) authority be a thief, or one in possession only by a breach of trust, or (by) * * * some other less blamable means of acquisition. The absence of (the proprietor's) authority to sell his literary property constitutes the defect of title, no matter how that want of authority arises. Owing to the peculiar character of this kind of property, the absence of the author's authority to sell is a defect of title, and not a mere want of power.' Henry Bill Pub. Co. v. Smythe, supra, 27 F. 914, 917-918; accord, Harrison v. Maynard, Merrill & Co., 61 F. 689, 690-91 (2 Cir., 1894) (dictum); Ball, Copyright & Literary Property (1944), at 439, 445. On the other hand, where a publisher had delivered unbound sheets of a copyrighted book to a bindery and, as the result of a fire in the bindery, subsequently authorized the binder to sell the damaged sheets, on condition that they be used as paper stock only, he was not allowed to enjoin a third party who had purchased the sheets from selling them as rebound second-hand books, since 'the right to restrain the sale of a particular copy of the book by virtue of the copyright statutes has gone when the owner of the copyright and of that copy has parted with all his title to it, and has conferred an absolute title to the copy upon a purchaser, although with an agreement for a restricted use.' Harrison v. Maynard, Merrill & Co., supra, 61 F. at 691; accord, Bobbs-Merrill Co. v. Straus, 210 U.S. 339, 350, 28 S.Ct. 722, 52 L.Ed. 1086 (1908); Independent News Co. v. Williams, 293 F.2d 510, 515-517 (3 Cir., 1961); Ball, supra, at 436-437; see United States v. Wells, 176 F.Supp. 630, 633 (S.D.Texas 1959); Kipling v. G. P. Putnam's Sons, 120 F. 631, 634, 65 L.R.A. 573 (2 Cir., 1903); cf. Adams v. Burks, 17 Wall. (84 U.S.) 453, 456, 21 L.Ed. 700 (1873). In the fact situations most nearly comparable to the one at bar, the courts have formulated the pivotal question as whether 'lawful ownership' of the copyrighted object has been 'transferred to a first purchaser,' Independent News Co. v. Williams, supra, 293 F.2d at 517; whether the proprietor had 'parted with the title to one who had acquired full dominion over it and had given a satisfactory price for it,' Bobbs-Merrill Co. v. Straus, supra, 210 U.S. at 350, 28 S.Ct. at 726; or whether the object has been 'sold by authority of the owner of the copyright,' ibid.; see also Henry Bill Pub. Co. v. Smythe, supra, 27 F. at 925.
 
 
 16
 Whereas defendants' extreme position is based on the letter of 27, plaintiff's broadest contention relies, with equal literalism, on the 'first sale' language of the House Report and some judicial opinions. The proprietor retains his exclusive right to vend the copyrighted work, it is contended, until he himself has made or authorized one truly voluntary 'sale' and received a satisfactory 'price' from the 'purchaser.' But the House Committee's statement 'that it would be most unwise to permit the copyright proprietor to exercise any control whatever over the article which is the subject of copyright after said proprietor has made the first sale' does not necessarily mark the limit of the committee's views as to unwisdom; the committee might well have thought it equally unwise that copyrighted goods should enjoy total immunity from the ordinary obligations of commercial life, such as judicial sales on execution or foreclosure, or by an equity receiver or a bankruptcy trustee. There is nothing in the language or the legislative history of 27 that requires such an unreasonable result, and nothing in the judicial authority under the 'first sale' doctrine either. True it is that during the first three-quarters of the nineteenth century it was often suggested in this country that copyright and patent rights could not be reached by creditors at all, or subjected to any compulsory transfer of ownership. Stevens v. Gladding, 17 How. (58 U.S.) 447, 451, 15 L.Ed. 155 (1855); Cooper v. Gunn, 43 Ky. 594, 596 (1844); Dart v. Woodhouse, 40 Mich. 399, 401 (1879); see Sawin v. Guild, 21 Fed.Cas. p. 554 (No. 12,391) (C.C.D.Mass.1813) (Story, Circuit Justice; Note, Creditors' Rights Against Interests in Patents and Copyrights, 26 Va.L.Rev. 1038, 1039 (1940). But in 1882 the Supreme Court made clear that a court of equity could subject a patent right to the payment of a judgment debt of the patentee, and declared that 'the provisions of the patent and copyright acts, securing a sole and exclusive right to the patentee, do not exonerate the right and property thereby acquired by him * * * from liability to be subjected by suitable judicial proceedings to the payment of his debts.' Ager v. Murray, 105 U.S. 126, 128, 26 L.Ed. 942 (1882); see Stephens v. Cady, 14 How. (55 U.S.) 528, 531-532, 14 L.Ed. 528 (1852) (dictum). Although the rule persisted that the patent right itself could be compulsorily transferred only in equity and was not subject to sale under a common law execution, Newton v. Buck, 77 F. 614 (2 Cir., 1896); Underfeed Stoker Co. v. American Ship Windlass Co., 165 F. 65 (C.C.D.R.I.1908); Wilson v. Martin-Wilson Automatic Fire Alarm Co., 151 Mass. 515, 24 N.E. 784, 8 L.R.A. 309 (1890); 2 Walker, Patents (Deller Ed.1937), 235; 26 Va.L.Rev., supra, at 1039-40; but see McClaskey v. Harbison-Walker Refractories Co., 138 F.2d 493 (3 Cir., 1943), it was held in 1883 that a patented object in the patentee's hands, as distinguished from the patent itself, could be reached even at law, so that a purchaser at a sheriff's sale conducted under an execution against the patentee took the same rights to the patented object that the patentee had had, and the same rights that the purchaser would have taken if he had been an orthodox 'first purchaser' under a voluntary sale by the patentee. Wilder v. Kent, 15 F. 217 (C.C.W.D.Pa.1883). While the intervening years have seen an occasional recrudescence of the view that one who purchases a copyrighted or patented object at a judicial sale is guilty of infringement if he sells it, e.g., In re Progress Lektro Shave Corp., 35 F.Supp. 915 (D.Conn.1940),[3] we see no reason to doubt that the sensible rule of Wilder v. Kent is the law today.
 
 
 17
 The foregoing makes it clear that the 'first sale' which terminates the exclusive right to vend patented or copyrighted objects need not be a truly voluntary one, but can consist of some reasonable and recognized form of compulsory transfer, such as a judicial sale or court-compelled assignment. In such cases the ultimate question embodied in the 'first sale' doctrine--'whether or not there has been such a disposition of the article that it may fairly be said that the patentee (or copyright proprietor) has received his reward for the use of the article,' United States v. Masonite Corp., 316 U.S. 265 at 278, 62 S.Ct. 1070, at 1077, 86 L.Ed. 1461-- is answered in the affirmative, since the proprietor or patentee has received from his creditor some value for which the copyrighted or patented article is now demanded unless the debt is paid. If rationalization is needed, this can be in terms of involuntary 'sale,' of a presumed 'consent' by the proprietor or patentee to the rights and remedies that are normally applicable to material objects in the course of trade, or of his being 'estopped' to deny that he has authorized transfer of the goods, see Henry Bill Pub. Co. v. Smythe, supra, 27 F. at 918. Thus, just as we have rejected defendants' absolutist contention that anyone in lawful possession of copyrighted goods may sell them without infringement, we likewise reject plaintiff's extreme position that copyrighted goods are immune from the normal remedies of unpaid creditors until the proprietor has had one truly voluntary 'sale.'
 
 
 18
 The brings us to defendants' contention that Republic, having manufactured the goods and not yet having delivered them to Platt & Munk, was 'prior in title to the copyright holder'-- with the asserted result that Platt & Munk's exclusive right to vend simply never attached. Assuming arguendo that Republic did have title to the goods under state law and that this title had not yet passed to Platt & Munk, we see no reason why this type of title should be superior, for the purpose of alienating rights from the copyright proprietor, to title acquired by buying from an agent of the proprietor who had apparent but not actual authority to sell, or by buying in good faith from someone who has bought from such an agent. If the raw materials that went into the goods had been supplied by Platt & Munk instead of Republic, title would have been in the former rather than the latter. Wm. H. Wise & Co. v. Rand McNally & Co., 195 F.Supp. 621, 628 (S.D.N.Y.1961). Yet it would seem exceedingly odd that copyright protection should turn on which party has furnished the physical stuff to which the copyrighted conception is affixed-- with the protection lost if the author does not assume a role for which others are usually better suited.
 
 
 19
 Although Republic thus obtained no right to sell the goods solely by virtue of its title to the materials, this does not mean that such a right may not have arisen from the contract relationship between Republic and Platt & Munk, as a result of default by the latter. Defendants' final contention is, in fact, that Republic has the 'right of resale' granted to an 'unpaid seller' under 141 of the New York Personal Property Law, McKinney's Consol.Laws, c. 41 (Uniform Sales Act, 60). It is true that our interpretation of the 'first sale' doctrine leads to the conclusion that if Republic had obtained an adjudication that Platt & Munk was in default on the contract price or that Republic had a valid lien on the goods and a right to resell them, Republic and the other defendants could sell without liability for infringement, just as a judgment creditor or another lienor foreclosing through the judicial process could do. Indeed, this Court has assumed that proper foreclosure of a lien on positive prints of a copyrighted motion picture under 188 of the New York Lien Law, McKinney's Consol.Laws, c. 33 would enable the purchaser to sell or exhibit the prints without infringing the copyright. Independent Film Distributors v. Chesapeake Industries, Inc., 250 F.2d 951 (2 Cir., 1958).
 
 
 20
 The difficulty comes from the fact that the law gives an unpaid manufacturer a right to sell without prior adjudication of the merits of his claim. Thus, an unpaid seller is normally free to sell goods in his upossession, either because title has not passed[4] or, if it has, 'Where the goods are of a perishable nature, or where the seller expressly reserves the right of resale in case the buyer should make default, or where the buyer has been in default in the payment of the price an unreasonable time.' N.Y.Personal Property Law, 141. And 'A person who makes, alters, repairs or in any way enhances the value of an artical of personal property, at the request or with the consent of the owner, has a lien on such article, while lawfully in possession thereof, for his reasonable charges for the work done and materials furnished * * *', N.Y.Lien Law, 180-- a lien which he may enforce not only by retaining possession, as at common law, but by sale pursuant to notice, id., 200-205, as well as by action, 206. We see no reason why the copyrighted character of the goods should preclude these remedies when-- and the qualification is vital-- the person for whom the goods were being made unjustifiably declines to pay the price. In such event too the copyright owner has received 'his reward'; if consent on his part is needed, there would be at least as much basis for implying it, or for holding him estopped to deny it, in these cases as on an execution sale.
 
 
 21
 In the present case, however, Republic has obtained no adjudication that Platt & Munk's refusal to pay for allegedly defective goods was unjustified, or that Platt & Munk 'has been in default in the payment of the price an unreasonable time'. Where the copyright owner makes a good faith claim that its failure to pay for the goods was justified, the manufacturer ought not be allowed to resort to the normal remedy of self-help with the result of impairing the rights granted by the federal copyright law; to that extent state contract or lien law must yield to the federally created right. The District Court thus properly issued an injunction to maintain the status quo until this critical issue could be determined. Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2 Cir., 1953). Where we think it stopped somewhat short was in not finishing the job by providing for early resolution of the issue. Republic, having made what it considers a valid tender of the goods, has a claim for the purchase price; this is a compulsory counterclaim under F.R.Civ.Proc. 13(a), on which Republic is entitled to a speedy trial. The orders should thus be modified to provide that on the filing of such a counterclaim the issues with respect to its performance of the contracts with Platt & Munk should be set for immediate trial and that, to the extent it be found that Platt & Munk was not justified in refusing to accept the goods, or any of them, the injunction will be lifted as to such goods unless within fifteen days thereafter Platt & Munk pays their full price with interest. The District Court should also determine, in theh light of the ultimate decision on the contract issues, what amounts, if any, should be assessed against Platt & Munk with respect to the expenses incurred by defendants in this litigation. We think it best that costs on these appeals abide the event.
 
 
 22
 Orders modified and affirmed.
 
 
 23
 MOTIONS FOR ISSUANCE OF MANDATE AND CONSOLIDATION; PETITION FOR REHEARING
 
 
 24
 PER CURIAM.
 
 
 25
 Our opinion was plainly not intended to restrict the District Court in trying to restrict the District Court in trying any and all issues raised by the pleadings in such manner and to make such disposition of them as the law and the facts demand, but rather to emphasize the critical bearing of the contract issues existing between Platt & Munk and Republic and the consequent need to determine them. Save for this clarification, which can hardly have been needed, Platt & Munk's petition for rehearing is denied. Although Playmore's motion for consolidation is not opposed, this is a matter for the District Court; the motion is therefore denied without prejudice to its renewal there. Republic's motion for immediate issuance of the mandate is granted.
 
 
 
 [1]
 We assume the reference was to the definition of 'author' as including 'an employer in the case of works made for hire.' 17 U.S.C. 26
 
 
 [2]
 Platt & Munk has not heavily relied upon this letter. The opposing affidavit of Republic on the motion for a temporary injunction and the reply brief of Playmore, Inc. in this Court construe it as intended only to exclude any claim that Republic's design services gave Republic an interest in the copyright, and not as affecting Republic's rights in the manufactured goods. We accept that construction for present purposes, without prejudice to Platt & Munk's hereafter contening that the letter had a broader import
 
 
 [3]
 This case held that a pulbic sale by a trustee in bankruptcy of patented articles belonging to the estate constituted an infringement. In fact the patentee, whose rights were held infringed, was not the bankrupt but someone else, who apparently had licensed the bankrupt to manufacture the patented articles but not to sell them; thus the judicial sale, even if treated as equivalent to a voluntary one, was still unauthorized by the patentee and hence an infringement of his exclusive right to vend. However, the judge treated the situation as equivalent to that in Sawin v. Guild, supra, where a sheriff had levied on and sold patented articles under an execution against the patentee, and the implication is that even this would be an infringement
 
 
 [4]
 The same, of course, is true in the case of contracts not of sale but 'for work, labor and materials,' which the district judge found the contracts here to be. See Clay v. Yates, 1 H. & N. 73, 156 Eng.Rep. 1123 (1856); Wm. H. Wise Co. v. Rand McNally & Company, 195 F.Supp. 621 (S.D.N.Y.1961)