**AMERICAN INTERNATIONAL PICTURES, INC., Columbia Pictures Industries, Inc., Metro-Goldwyn-Mayer, Inc., Twentieth-Century Fox Film Corp., Walt Disney Productions, Universal City Studios, Inc. and United Artists Corporation, Plaintiffs-Appellants,**

v.

**Evan H. FOREMAN, d/b/a 16 MM Filmland, and 16 MM Filmland, etc., Defendants-Appellees.**

**No. 75–3581.**

United States Court of Appeals,
Fifth Circuit.

July 17, 1978.

---

Irvin J. Langford, George W. Finkbonner, Jr., Mobile, Ala., Herbert C. Earnshaw, New York City, Charles H. Kirbo, John C. Staton, Jr., Joseph R. Bankoff, Atlanta, Ga., for plaintiffs-appellants.

Harry H. Riddick, Joseph M. Allen, Jr., Mobile, Ala., for defendants-appellees.

Before GODBOLD, HILL and FAY, Circuit Judges.

GODBOLD, Circuit Judge:

These consolidated cases arose and were tried under the copyright law prior to the effective date of the new copyright statute.[1] Seven major motion picture distributors sued Foreman claiming copyright infringement of 120 motion pictures. They alleged that Foreman violated their exclusive right, granted by 17 U.S.C. § 1(a), to vend these films by selling and dealing in them through his business, 16 MM Filmland. The question on appeal involves the operation of 17 U.S.C. § 27 (of the old statute), the "first sale doctrine," which provides that "nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained." The district judge, relying upon the weakness of plaintiffs' evidence and a presumption that defendant's possession was lawful, held that the plaintiffs had not carried the burden of proving the essential element of the nonoccurrence of a first sale. We reverse.

Except for the issue of which party must bear the burden of proof,[2] the law

---

[1]. The new copyright law, 17 U.S.C. § 101 *et seq.*, passed in 1976 and effective January 1, 1978, obviates the question in this case. 17 U.S.C. § 109(c) makes exercise of any of the copyright holder's privileges contingent on actual ownership rather than mere possession. The legislative history of the new act reveals that Congress was aware of the lower court decision in this case and specifically rejected it. The House Committee explicitly stated that under the new act the burden of proving that a *particular copy was lawfully made or acquired* rests on the defendant. Notes of Comm. on the Judiciary, H.R.Rep.No. 94-1476, U.S.Code Cong. & Admin.News 1976, p. 5659, *reprinted as* "Historical Note" to 17 U.S.C.A. § 109. This legislative pronouncement, whatever its effect on litigation under the new statute, does not control our interpretation of the old copyright law.

[2]. Criminal copyright cases have consistently held that the government bears the burden of negating the occurrence of a first sale. *See, e. g., U. S. v. Atherton,* 561 F.2d 747 (CA9, 1977); *U. S. v. Drebin,* 557 F.2d 1316 (CA9, 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978); *U. S. v. Wise,* 550 F.2d 1180 (CA9, 1977), *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977); *U. S. v. Bily,* 406 F.Supp. 726 (E.D.Pa.1975); *U. S. v. Wells,* 176 F.Supp. 630 (S.D.Tex.1959). This result may be required, as a matter of constitutional law, under the principle that due process re-

surrounding the first sale doctrine is clear. The exclusive right to vend a copy of a copyrighted work extends only to the first sale of that copy. *See Fawcett Publications, Inc. v. Elliot Publishing Co.*, 46 F.Supp. 717 (S.D.N.Y.1942). After the first sale of a copy the copyright holder has no control over the occurrence or conditions of further sales of it. *See, e. g., Independent News Co. v. Williams*, 293 F.2d 510 (CA3, 1961); *Harrison v. Maynard, Merrill & Co.*, 61 F. 689 (CA2, 1894). Even if the copyright holder places restrictions on the purchaser in a first sale (such as specifying the permissible uses of the article), the buyer's disregard of the restrictions on resale does not make the buyer or the person who buys in the secondary market liable for infringement. *See, e. g., Burke & Van Heusen, Inc. v. Arrow Drug, Inc.*, 233 F.Supp. 881 (E.D. Pa.1964).[3] The first sale thus extinguishes the copyright holder's ability to control the course of copies placed in the stream of commerce.

■ Conversely, even an unwitting purchaser who buys a copy in the secondary market can be held liable for infringement if the copy was not the subject of a first sale by the copyright holder. *See Platt & Munk Co. v. Republic Graphics, Inc.*, 315 F.2d 847 (CA2, 1963); *Henry Bill Publishing Co. v. Smythe*, 27 F. 914 (S.D.Ohio 1886). Thus unless title to the copy passes through a first sale by the copyright holder, subsequent sales do not confer good title. Neither Foreman nor the distributors challenge these points of law.

Each party proved very little at trial. The distributors presented only the copyright certificate for each of the films and an executive from each plaintiff corporation who testified generally that none of the films in the complaint had been the subject of a first sale. The corporate officers also attempted to show that sales to film salvage companies, loans to studio VIP's, and television distribution were so tightly controlled that Foreman could not have obtained films through these sources. None of the plaintiffs produced records or testimony accounting for all prints of the specific films on which infringement was alleged.

Foreman's evidence was equally general. He demonstrated that each of the distributors had sold prints of films not listed in the complaint and that in general the control of films in salvage sales, VIP loans, and television distribution was so lax that films could be obtained through these sources. Foreman did not claim that he had acquired any of his films from these sources. Indeed Foreman could not show the source of any of his films. He described his record system as "self-liquidating" and stated in a deposition that he knew better than to ask where his sources acquired their films.

The district court rightly found as fact that neither party had proven chain of title. The court went on to hold, however, that as a matter of law Foreman was entitled to rely on a presumption that possession is rightful; this presumption, plus Foreman's evidence (which the court accepted) that the plaintiffs had made first sales of films not included in the complaint, required the plaintiffs to prove that no first sale of any film in the complaint had ever been made. We think the court committed errors of law in finding for the defendant.

■ First, we hold that a defendant may not rely on a common law presumption that possession is rightful. This presumption, of little force even in the common law

quires the government to bear the burden of proof on every essential element of the crime. *See Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). *But see Patterson v. New York*, 432 U.S. 197, 53 L.Ed.2d 281 (1977). We regard these criminal cases as not controlling the civil allocation of the burden of proof.

3. The copyright holder is limited to a suit against the original buyer for breach of the

of personalty,[4] is foreign to copyright law and conflicts with it. In copyright law the copyright certificate is prima facie evidence that the copyright holder retains all rights granted by the copyright. *See Tennessee Fabricating Co. v. Moultrie Manufacturing Co.*, 421 F.2d 279 (CA5), *cert. denied*, 398 U.S. 928, 90 S.Ct. 1819, 26 L.Ed.2d 91 (1970). The right to vend is one of these rights. Here the plaintiffs' evidence established a course of conduct, unrebutted as to the specific films in the complaint, consistent with an intention to retain all the rights associated with the grant of copyright to the films in question. We have located no copyright case holding that possession of a copy by a third person overcomes the rights of the copyright holder in such circumstances. Rather, because copyright law favors the rights of the copyright holder, the person claiming authority to copy or vend generally must show that his authority to do so flows from the copyright holder. *See, e. g., Von Tilzer v. Jerry Vogel Music Co.*, 53 F.Supp. 191 (S.D.N.Y.1943), aff'd, 158 F.2d 516 (CA2, 1946); *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 47 F.Supp. 490 (S.D.N.Y.1942), aff'd, 140 F.2d 266, modified, 140 F.2d 268 (CA2, 1944); *Schellberg v. Empringham*, 36 F.2d 991 (S.D.N.Y. 1929). None of these cases suggests that mere possession of a copy is sufficient to meet this burden.

▇▇▇▇ Whether the occurrence of a first sale is an affirmative defense on which the defendant bears the burden of proof or is an element of the plaintiffs' case, the plaintiffs here came forward with evidence—the copyright certificates and a course of conduct consistent with retaining all rights therein granted—that no first sale had occurred. Evidence of mere possession of a copy is not sufficient to rebut this evidence. Rather, because Foreman's authority to vend depended on either authorization from the copyright holder or title acquired through a first sale, he must produce evidence to show that one of these two events

occurred. Mere possession is not probative of title, because one in possession acquires no better title than his seller. *See generally, e. g., Deitsch v. Wiggins*, 82 U.S. (15 Wall.) 539, 21 L.Ed. 228 (1873). Other than mere possession Foreman showed nothing to establish his title to the copy or to indicate authorization to vend. Evidence that the plaintiffs made first sales of the films in the complaint may raise an inference that Foreman acquired a copy through a sale and thus shift the burden back to the plaintiffs to show that Foreman's copy was not the one sold. Or evidence that Foreman acquired his copy from a source, such as a film library or junk dealer, that may have received title through a first sale could place the burden of going forward on the plaintiffs to trace title backward to an illegitimate acquisition. Foreman did not produce such evidence, however, and the district court did not specifically find that any film listed in the complaint had been the subject of a first sale. On remand the district court may make such findings or may permit Foreman to produce such evidence as he can to show either rightful title or events probative of a first sale.

▇▇▇▇ Second, the district judge erred as a matter of law in holding that evidence of sales of films not in the complaint rebutted the plaintiffs' evidence that no first sale had been made of any film in the complaint. The plaintiffs' evidence, although flawed by its generality and gaps in the personal knowledge of the corporate witnesses, demonstrated that the plaintiffs had consistently attempted to retain title to the films involved in the complaint. Foreman's evidence, suggesting that first sales of other films had been made, demonstrated only that plaintiffs had not treated all films consistently. Foreman's general evidence, unrelated to any film in the complaint, thus left unrebutted the plaintiffs' proof that, whatever their treatment of other films, they had consistently avoided first sales of

---

contract containing the restrictions. *See Independent News Co., supra; Maynard, Merrill & Co., supra.*

4. *See generally Bohn v. Gruver*, 111 Cal.App. 386, 295 P. 891 (1931); *People v. Florus*, 67 Misc.2d 809, 325 N.Y.S.2d 127 (Sup.Ct.1971).

the films in this suit. In other areas of law Foreman's showing of an inconsistent course of conduct might be sufficient to at least return the burden to plaintiffs. In copyright law, however, each copyrighted item is unique. Moreover, for purposes of the first sale doctrine, each copy is unique; if the copyright holder possesses 100 copies and sells 99 of them, the final copy nonetheless remains protected from infringement. *See Platt & Munk, supra.* Thus general evidence, such as Foreman's was not sufficient to rebut the specific evidence on particular films. The only evidence relevant to rebut the plaintiffs' case is evidence concerning the films on which infringement is claimed. *See U. S. v. Wise,* 550 F.2d 1180, 1184 n.5 (CA9, 1977).

Third, the trial court did not make specific findings of fact as required by Federal Rule 52(a). *See also* Fed.R.Civ.P. 41(b). This suit, involving a claim of infringement on 120 separate films, was in reality the consolidation of 120 separate suits. The court made only a general finding that first sales had occurred. This will not suffice, since the question of first sale is a factual one to be made as to each of the films in the complaint. On remand the court must analyze the evidence on each film and, if necessary on each copy of a film, to determine whether it has been the subject of a first sale and enter a specific finding on that issue.

REVERSED and REMANDED for further proceedings not inconsistent with this opinion.