**MICROSOFT CORPORATION, Plaintiff,**

v.

**HARMONY COMPUTERS & ELECTRONICS, INC., and Stanley Furst, Defendants.**

No. CV 94–123 (RJD).

United States District Court, E.D. New York.

Feb. 11, 1994.

Brian W. Brokate, Beth M. Frenchman, Gibney, Anthony & Flaherty, New York City, for plaintiff.

Benjamin H. Segal, New York City, for defendants.

## MEMORANDUM OF DECISION

DEARIE, District Judge.

This is an action for copyright infringement, trademark infringement, and related statutory and common law claims. Plaintiff Microsoft Corporation, a developer, manufacturer, and marketer of computer software programs, seeks declaratory and injunctive relief and treble damages against Harmony Computers & Electronics Inc. ("Harmony") and its president; Stanley Furst (together the "defendants"), for allegedly selling, without license or authorization, copyrighted Microsoft MS–DOS and Microsoft Windows software programs and accompanying materials ("Microsoft Products" or "Products").

## BACKGROUND

On January 12, 1994, upon plaintiff's *ex parte* application and based on plaintiff's evidence that defendants were illegally copying and distributing Microsoft Products in violation of plaintiff's exclusive rights as the copyright holder, the Court ordered the seizure and impoundment of Microsoft Products and related business records at defendants' retail establishment, and temporarily restrained defendants from copying, using, distributing, secreting, or destroying any of plaintiff's copyrighted software.

Pursuant to the Court's Order, United States Marshals seized and impounded 106

pieces of Microsoft software. (Frenchman Decl. ¶ 4). The Court held an initial hearing on plaintiff's motion for preliminary injunction on January 20, 1994. At that time, the parties did not identify any material facts in dispute and indeed most of the relevant facts are well established. Also at that time, the Court invited the parties to submit any supporting papers. On January 24, 1994, the Court extended the Temporary Restraining Order until February 1, 1994, pending the Court's decision on plaintiff's motion for preliminary injunction.

Plaintiff argues that because defendants are not licensed by Microsoft, they are not legitimately in possession of, and are not entitled to sell, any Microsoft Products, whether counterfeit or not. To the extent that defendants bought their Microsoft Products from legitimate Microsoft licensees, plaintiff argues that defendants violated Microsoft's licensing restrictions by distributing the Products "stand-alone," that is, by themselves rather than bundled with one of the personal computer systems manufactured by Microsoft licensees. Furthermore, plaintiff alleges, and defendants acknowledge, that defendants persisted in their sales of Microsoft Products despite being notified of the alleged illegality of their activity by plaintiff's cease and desist letters of April 19, June 16, July 14, and September 14, 1993. Plaintiff has advised the Court, by the declarations of Robert Wanezek, Program Manager of Microsoft's Replication Group, and of Lee Gates, its Software Design Test Engineer, that twenty-one pieces of the Products seized from defendants' premises were counterfeit.

Defendants do not contest that they sold Microsoft Products, or that they sold such Products stand-alone as well as loaded onto the hard disks of computers. Defendants argue, however, that because the Products they sold were purchased from Microsoft licensees, they are immune from liability for copyright infringement under the first sale doctrine. In response, plaintiff argues that the first sale doctrine does not apply to the present case because Microsoft never sells but rather only licenses its Products. Defendants also deny that any of the Microsoft Products that they sold were counterfeit.

Alternatively, defendants argue, even if any of the Products were counterfeit, they bought them from Microsoft licensees under the good faith belief that the Products were genuine.

Although the Court attempted to set a date for a potential evidentiary hearing, both parties indicated that they would have difficulties assembling the witnesses needed for such a hearing prior to the expiration of the Temporary Restraining Order. Moreover, upon review of the papers, the Court concluded that no evidentiary hearing was required to resolve the motion for preliminary injunction. By Order of February 1, 1994, the Court granted plaintiff's motion for preliminary injunction.

## DISCUSSION

### I. Standard for Preliminary Injunction

■ A party seeking a preliminary injunction must establish both irreparable injury and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the movant. *ICN Pharmaceuticals, Inc. v. Khan*, 2 F.3d 484, 489 (2d Cir.1993); *Bourne Co. v. Tower Records, Inc.*, 976 F.2d 99, 101 (2d Cir.1992).

### II. Prima Facie Case

■ To establish a prima facie case of copyright infringement, the plaintiff must show that (1) it is the valid owner of a copyright and (2) defendant has engaged in unauthorized "copying," *see Video Trip*, 866 F.2d at 51–52; *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985), where "copying" "is shorthand for the infringing of any of the copyright owner's five exclusive rights, described at 17 U.S.C. § 106." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n. 5 (9th Cir.1989). Section 106 of title 17 of the United States Code provides in relevant part:

[T]he owner of copyright under this title has the exclusive rights to do and to authorize . . .

(1) to reproduce the copyrighted work in copies ...

....

(3) to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending ...

17 U.S.C. § 106 (1977). Upon establishing a "reasonable likelihood of success on the merits," in an action for copyright infringement, irreparable injury is presumed. *Bourne,* 976 F.2d at 101; *Video Trip Corp. v. Lightning Video, Inc.,* 866 F.2d 50, 51–52 (2d Cir.1989); *Apple Computers, Inc. v. Formula Int'l Inc.,* 725 F.2d 521, 525–26 (9th Cir.1984).

**A. Copyright Ownership**

Microsoft has submitted certificates of federal copyright registration, which constitute prima facie evidence of the validity of plaintiff's copyrights. 17 U.S.C. § 410(c) (1977).[1] Defendants do not contest that plaintiff owns the copyrights to Microsoft Products.

**B. Unauthorized Distribution**

■ Defendants are not Microsoft licensees and therefore are not authorized to sell Microsoft Products. Barbara Schmidt, an accounting supervisor for Microsoft's domestic Original Equipment Manufacturer ("OEM") licensing, declares that defendant Harmony was never at any time a Microsoft licensee. *See* (Schmidt Decl. ¶ 3); (Schmidt Supplemental Decl. ¶ 3). Defendants do not contest this fact. Furthermore, although defendant Stanley Furst was a signatory to a license agreement dated December 2, 1993, between Microsoft and another one of Furst's companies, Everything Computers, Inc., (Schmidt Supplemental Decl. ¶ 3)[2]; (Furst Aff. of January 25, 1994, ¶ 5), Mr. Furst was not himself a Microsoft licensee. (Schmidt Supplemental Decl. ¶ 5). The license held by Everything Computers does not authorize defendants Harmony or Furst to distribute Microsoft Products.

Defendants sold Microsoft Products, as evidenced by the fact that private investigators hired by Microsoft successfully bought various Microsoft Products from defendants, (Holmes Decl. ¶¶ 3–8), that Harmony advertised the sale of MS–Dos 6.0, (Holmes Decl. Ex. 5), and that persons who had bought Microsoft Products from Harmony had called Microsoft's Piracy Hotline to question the legitimacy of their purchases. (Erickson Decl. ¶¶ 7–8). Defendants do not contest that they sold Microsoft Products, (Furst Aff. of January 17, 1994, ¶ 2), nor do they dispute that such activity would constitute copyright infringement absent the protection of the first sale doctrine. Because defendants are not authorized by Microsoft to distribute Microsoft Products, their distribution of those Products constitutes a prima facie case, that is, a likelihood of success on the merits of plaintiff's copyright infringement claim. Irreparable harm to plaintiff is therefore presumed.

■ Defendants argue that they in good faith believed that they were buying Products from authorized Microsoft licensees, and that their sales of the Products were therefore lawful. It is unlikely, in this case, that defendants were innocent infringers, as they were notified by Microsoft of the unlawfulness of their activities by letters dated April 19, June 16, July 14, and September 14, of 1993. (Lowe Decl. ¶ 3, Ex. A). Moreover, good faith is no defense against liability for copyright infringement. *ISC–Bunker Ramo Corp. v. Altech, Inc.,* 765 F.Supp. 1310, 1331 (N.D.Ill.1990) ("there is no such thing as a bona fide purchase for value in copyright law"). Accordingly, defendants' good faith defense must fail.

Finally, it is undisputed that any sale of *counterfeit* Microsoft Products by defendants

1. Section 410(c) of title 17 of the United States Code provides:
   (c) In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.
   17 U.S.C. § 410(c) (1977).

2. Although Schmidt's Declaration states that the date of the agreement was "December 2, 1994," this is undoubtedly a typographical error.

would violate the federal copyright laws. Plaintiff has submitted the declarations of Robert L. Wanezek, Program Manager of Microsoft's Replication Group, and of Lee R. Gates, a Software Design Test Engineer for Microsoft, and samples of seized "counterfeit" Microsoft Products from defendants' premises, to support their claim that defendants sold counterfeit Products. Although defendants deny that any of the Products they sold were counterfeit, they provide no evidence to contradict plaintiff's sworn assertions. In the absence of an evidentiary hearing, and given that plaintiff is likely to succeed on the merits of its copyright infringement claim on the grounds that defendants were not licensees and therefore not authorized to distribute *any* Microsoft products, counterfeit or not, the Court declines at this juncture to make a finding as to the genuineness of the Microsoft Products sold by defendants.

### III. First Sale Doctrine Does Not Apply

■ Defendants argue that even though they sold Microsoft Products without a license, they are immune under the first sale doctrine from liability for copyright infringement. Defendants fail to prove that the first sale doctrine applies because they do not trace their purchase of Microsoft Products to a "first sale" by Microsoft or any party authorized by Microsoft to sell the Products.

■ The first sale doctrine is codified at section 109(a) of title 17 of the United States Code, which provides that:

(a) Notwithstanding the provisions of section 106(3), the owner of a particular copy ... lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy ...

17 U.S.C. § 109(a) (1977). This statute "restates and confirms the principle that, where the copyright owner has transferred ownership of a particular copy ... of a work, the person to whom the copy ... is transferred is entitled to dispose of it by sale ... or any other means." Historical Note to 17 U.S.C. § 109. In civil actions for copyright infringement, the defendant has the burden of proving that the particular pieces of the copyrighted work that he sold were lawfully made or acquired. *See* Historical Note to 17 U.S.C. § 109, *cited in American Int'l Pictures, Inc. v. Foreman*, 576 F.2d 661, 663 n. 1 (5th Cir.1978).

■ Defendants argue that a "first sale" occurred when they bought their Microsoft Products from entities whom they believed to be authorized Microsoft licensees. Although a sale of a copyrighted work by a party authorized by the copyright holder may constitute a "first sale" for purposes of the first sale doctrine, *see Burke & Van Heusen, Inc. v. Arrow Drug, Inc.*, 233 F.Supp. 881, 884 (E.D.Pa.1964), defendants have the burden of tracing the chain of title to show that their authority to sell Microsoft Products flows from the copyright holder. *American Int'l Pictures, Inc.*, 576 F.2d at 664–65; *Microsoft Corp. v. ATS Computers, Inc. et al.*, CV 93–1273, at 14 (S.D.Cal.1993).

Defendants' only evidence of a chain of title for any of their Products is an invoice of their purchase of several pieces of Microsoft Products from an entity called Innovative Datronics Corp. The fact that defendants bought their Microsoft Products from another party does not by itself establish a first sale. "Even an unwitting purchaser who buys a copy in the secondary market can be held liable for infringement if the copy was not the subject of a first sale *by the copyright holder* ... unless title to the copy passes through a first sale *by the copyright holder*, subsequent sales do not confer good title." *American Int'l Pictures, Inc.*, 576 F.2d at 664 (emphases added). *See also Platt & Munk Co. v. Republic Graphics, Inc.*, 315 F.2d 847 (2d Cir.1963) ("it has been held that sale of a book purchased from a merchant who bought it from an agent of the copyright proprietor, where the agent had been entrusted with possession of the book but not with actual authority to sell it, is infringement"). No evidence has been presented to show that Innovative Datronics or any party in the chain of title was a licensee of Microsoft and authorized to sell the product.

■ Defendants' failure to trace their Microsoft Products to a "first sale" by the

copyright holder is aggravated by the fact that plaintiff has "established a course of conduct ... consistent with an intention to retain all the rights associated with the grant of copyright" of the Microsoft Products. *American Int'l Pictures, Inc.*, 576 F.2d at 665. Plaintiff's counsel declares that Microsoft only licenses and does not sell its Products, (Brokate Supplemental Decl. at 2). Entering a license agreement is not a "sale" for purposes of the first sale doctrine. *ISC–Bunker Ramo Corp.*, 765 F.Supp. at 1331. Moreover, the only chain of distribution that Microsoft authorizes is one in which all possessors of Microsoft Products have only a license to use, rather than actual ownership of the Products. (Brokate Second Supplemental Decl. at 5).

Defendants' failure to meet their burden of proving a chain of title distinguishes this case from *Burke* and precludes the applicability of the first sale doctrine to this case.

### IV. Exceeding Scope of License Agreements

█ Plaintiff is likely to succeed on its claim that defendants are liable for copyright infringement for exceeding the scope of Microsoft's license agreements.

Plaintiff has traced a unit of MS–DOS 6.0 that Harmony had sold to plaintiff's undercover investigators, back to Amax Engineering, a Microsoft licensee that was authorized to distribute MS–DOS 6.0 exclusively with the sale of its personal computer systems. (Erickson Decl. ¶ 4). Plaintiff has also traced four of the MS–DOS 6.2 units seized from defendants' premises, back to Arche Technologies, a Microsoft licensee that was authorized to distribute MS–DOS and Windows only with its computer systems. (Frenchman Decl. ¶ 4). The remainder of the Microsoft software seized from defendants' premises were not traceable to a specific licensee, but plaintiff's counsel affirms that none of the Products was authorized to be sold stand-alone. (Frenchman Decl. ¶ 5).

To the extent that defendants bought their Microsoft Products from authorized Microsoft licensees, they were subject to the same licensing restrictions under which those licensees operated. *See Major League Base-*

*ball Promotion v. Colour–Tex,* 729 F.Supp. 1035, 1041, 1042 (D.N.J.1990). Plaintiff's counsel have represented to the Court that every Microsoft license agreement contains the same licensing language, which provides in relevant part, that licensees:

> ... shall distribute Product(s) only with [licensee's] Customer System(s) ... for the particular Product(s) and only inside the Customer System package. [The licensee] shall provide a copy of the ... Product with, and only with, each Customer System on which the corresponding Preinstalled Product Software is distributed.

(Microsoft License Agreement, ¶ 5(a)(i)). This restriction requires that Microsoft Products only be sold together with a "Customer System," that is, a "single user computer system." (Microsoft License Agreement, ¶ 1(c)), rather than on a stand-alone basis. Indeed, plaintiff's in-house counsel declares that "it is generally known in the computer software industry that except for upgrade products, Microsoft does not authorize anyone to distribute stand-alone MS–DOS product." (Lowe Supplemental Decl. ¶ 5). Plaintiff explains that Products that are sold stand-alone or otherwise outside the scope of Microsoft's license agreements, though identical in exterior appearance to authorized Microsoft Products, do not come with the product support system, warranties, and assured compatibility with their personal computer systems that Microsoft provides for its legitimately distributed Products. (Lowe Supplemental Decl. ¶¶ 6–8). Therefore, plaintiff argues, the sale of stand-alone Products irreparably harms Microsoft's goodwill and reputation as a reliable software producer. *Id.*

Plaintiff's private investigator purchased Microsoft Products from defendants in stand-alone form. (Holmes Decl. ¶ 4). Defendants admit that they sold stand-alone Microsoft Products, (Furst Aff. of January 17, 1994, at 2), but allege that they were entitled to do so because Microsoft itself or its licensees sold stand-alone Products. *Id.* In support of this argument, defendants have submitted invoices which purport to show that Furst's company, Everything Computers, a Microsoft licensee, purchased stand-alone units of Microsoft

software from plaintiff. (Furst Aff. of January 25, 1994, Ex. at 9–11).

Defendants' argument is unpersuasive. First, to the extent that defendants' argument invokes the first sale doctrine, it must fail for the reasons stated above.[3] Second, even assuming that Microsoft sells its software to its licensees on a stand-alone basis, this does not change the fact that when the licensees in turn distribute the software, they are restricted by the license agreement in a way that the copyright holder itself is not. *See* (Microsoft License Agreement, ¶ 5(a)(i)) (restricting Everything Computers to distributing Microsoft Products only together with its computer systems). In fact, plaintiff's in-house counsel affirms that "[a] legitimate retail market for stand-alone MS–DOS does not exist." (Lowe Supplemental Decl. ¶ 5). Third, if defendants purchased their Products from Microsoft licensees who were acting outside the scope of their licenses by selling the Products stand-alone, *any* distribution of the Products by defendants, whether within the scope of plaintiff's license agreement or not, would constitute copyright infringement. *Microsoft Corp. v. ATS Computers, Inc. et al.*, CV 93–1273 (S.D.Cal.1993); *Major League Baseball Promotion v. Colour–Tex*, 729 F.Supp. 1035, 1041 (D.N.J.1990) ("A licensee who has failed to satisfy a condition of the license or has materially breached the licensing contract has no rights to give a sublicensee under which the sublicensee can take cover in a copyright infringement case, and therefore, both the licensee and the sublicensee can be held liable for acting without authorization and thereby infringing the licensor's copyright.").

■ Finally, plaintiff's claim that defendants exceeded the scope of its license agreements states a claim for copyright infringement rather than breach of contract. Not being parties to any license agreement with Microsoft, defendants are "complete strangers" to Microsoft, and their violations of the licensing restrictions must of necessity be seen as claims arising under the copyright

laws rather than the law of contracts. *See Marshall v. New Kids on the Block Partnership*, 780 F.Supp. 1005, 1008 (S.D.N.Y.1991). Even if defendants were seen as parties to Microsoft's license agreements, their undisputed distribution of Products outside the scope of the license agreements puts them in the same position as an infringer having no contractual relationship with the copyright holder and again makes them "strangers" to Microsoft. *Id.* at 1009; *Kanakos v. MX Trading Corp.*, 1981 WL 1377, *2 (S.D.N.Y. Sept. 16, 1981). Accordingly, plaintiff's allegation that defendants exceeded the scope of the license agreement states a claim for copyright infringement.

---

**3.** It is not clear from the invoices whether Microsoft in fact sold the Products to Everything Computers or was collecting only a license fee. Even if Microsoft's transactions with Everything Computers were "sales," defendants have still failed

to trace their particular units of Microsoft Products to sales by either Microsoft or its authorized licensees, and the first sale doctrine remains inapplicable to the present case.